SARGENT AND COMPANY vs. THE NEW HAVEN STEAMBOAT COMPANY.

Third Judicial District, New Haven, June Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

A judgment rendered by a trial court pursuant to the advice of this court is nevertheless the decision of the former tribunal; and the opinion of this court, although treated as part of the record and judicially noticed, is not paramount and decisive as to the matters which were actually submitted by the parties, tried by the lower court, and determined by its judgment. And this is especially true in a case involving the doctrine of *res judicata* when an attempt is made to detach a single phrase of such opinion and give it a controlling effect in determining the legal identity of the issues raised in the two cases.

The rule of *res judicata* does not rest wholly on the narrow ground of a technical estoppel, nor upon the presumption that the former judgment was right and just; but on the broad ground of public policy that requires a limit to litigation.

It is not necessary to the conclusiveness of a former judgment, that issue should have been taken upon the precise point controverted in the second action. Whatever is necessarily implied in the former decision is, for the purpose of estoppel, deemed to have been actually decided.

Each of the parties to the present suit had, in fact, for some years claimed title to and possession of the *locus in quo*, a portion of the shore of New Haven harbor, together with all riparian and wharfage rights belonging thereto. In 1881 the Steamboat Co. brought an action against Sargent & Co. to recover a small sum paid to the latter as wharfage fees for unloading a vessel at a certain point on a wharf which occupied a part of the *locus in quo*. In that action the facts were found and the case reserved for the advice of this court; and thereafter, pursuant to such advice, judgment was rendered by the trial court in favor of the Steamboat Co. The present action was one in the nature of ejectment, brought by Sargent & Co. against the Steamboat Co., in which the defendant pleaded and offered in evidence the former judgment in bar. *Held* that inasmuch as it appeared as a matter of law from the entire record that the real issue tried and determined in the former suit was in substance and legal effect the same, as to a portion of the demanded premises, as that now sought to be re-tried, the trial court properly ruled that the former judgment constituted a bar to a recovery by the plaintiff of that portion of the demanded premises; but erred in holding that such judgment was a bar to the plaintiff's right of recovery to the other portion of the premises.

Where it appeared from the judgment in such former action that an answer, now missing, had been filed, and from the finding of facts in

such case that the question sought to be litigated in the present action was the main point contested and settled under the pleadings in the former action, and had been so treated and argued by counsel, it was *held* that this court was bound to assume that the missing answer was appropriately framed for putting in issue the question now again sought to be tried. (One judge dissenting.)

[Argued June 14th—decided October 17th, 1894.]

ACTION to recover the possession of certain land together with the rents and profits thereof, brought to the Superior Court in New Haven County and tried to the court, *Hall, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *Judgment sustained in part and set aside in part.*

The material points in the case are sufficiently stated in the opinion.

*John W. Alling* and *John K. Beach,* for the appellant (plaintiff).

*Charles R. Ingersoll* and *Edward H. Rogers,* for the appellee (defendant).

HAMERSLEY, J. This is an action brought to the Superior Court, to recover possession of a piece of land which was originally a portion of the flats of New Haven harbor, lying between high water and low water-mark, and situated southerly of Water street, where that street is intersected by East street.

Sargent and Company, the plaintiff corporation, alleges title to the demanded premises, with all the water privileges and rights of wharfage belonging thereto, and a wrongful entry and dispossession by the defendant. The answer of the defendant, the Steamboat Company, contains two defenses. The first defense is a general denial. The second defense, in the nature of a plea in bar, alleges the defendant's possession of so much of the demanded premises as lie easterly of the east line of East street extended; that the right of possession and title to the same were adjudicated to be in the

defendant, and that the right of possession and title to the remainder of the demanded premises were adjudicated not to be in the plaintiff, by a judgment of the Court of Common Pleas, in an action between the same parties, in which action the parties were at issue upon these questions. The plaintiff denies the adjudication set up in the second defense. By order of the Superior Court the issues were separated, and the issues raised by the second defense were first tried. The court found these issues for the defendant, and that the judgment of the Court of Common Pleas is a bar to any recovery by the plaintiff in this action, and rendered final judgment for the defendant. The plaintiff appeals from that judgment.

The main question involved in the appeal is: Did the Superior Court err in holding that the right of possession to so much of the demanded premises as lie easterly of the east line of East street extended, is *res judicata* by reason of the judgment in the former action between the parties. On this question we can entertain no doubt. The defendant claims that the identity of issues in this case and the former case is, under the circumstances disclosed by the record, a question of fact, upon which the finding of the Superior Court is conclusive. Without passing definitely upon this claim, we treat the question as one of law, because the question of the identity of issues has been fully argued as a question of law, and it seems clear to us that, in view of the circumstances of this case and the conclusions reached, we ought to express an opinion upon the error as assigned in the plaintiff's appeal, that: "The court erred in finding that by the prior adjudication the title to so much of the demanded premises as lay east of the east line of East street was in the defendant."

The former action was commenced by the New Haven Steamboat Company in 1881, and was nominally an action to recover from Sargent and Company a sum due for wharfage. It was originally brought before a justice of the peace, and an appeal taken from his judgment on demurrer, to the Court of Common Pleas. In that court the case was referred

to a committee to find and report the facts. The report of the committee was accepted. By consent of all the parties to the record, in pursuance of § 1114 of the General Statutes, the questions of law arising upon the facts so found by the court were reserved for the advice of the Supreme Court of Errors. The Supreme Court advised judgment for the plaintiff, and in pursuance of that advice the Court of Common Pleas found the issues for the Steamboat Company and rendered judgment in its favor. The record in that action, containing the complaint, the finding of facts by the Court of Common Pleas, and its judgment thereon, was put in evidence in the present case by the Steamboat Company, in support of its second defense, and appears in full in the finding of facts by the Superior Court. The Steamboat Company claims that the real issue tried and decided by the Court of Common Pleas, as conclusively shown by this record, was its asserted right to reclaim the flats and extend its wharf from the land already reclaimed by it to low water-mark, along the westerly line of the land so reclaimed, which is the easterly line of East street extended. It is clear, and is admitted, that if such were the real issue decided in favor of the Steamboat Company, then the judgment is a bar to the recovery by Sargent and Company of any portion of the demanded premises lying easterly of that line. The answer is not printed with the record. The legal presumption from that fact alone might be that the case was tried on the general issue. But the formal judgment shows that an answer was in fact filed ; the report of the committee, which when accepted by the court became a part of the record, shows that the ownership and not the mere possession of the wharf at the place where the ship liable for the amount of wharfage in question lay, was the main point contested under the pleadings ; and the facts found by the court below in this case show that the learned counsel in the former action argued that case as if the question of ownership was involved under the pleadings, and treated that question as the main issue contested, to which all other questions were subordinate.

In view of these facts and the admissions of counsel in their arguments before us that the ownership of that portion of the wharf indicated was undoubtedly adjudicated in the former action, and of their failure to question the fact that such ownership was, in law, a matter in issue under the pleadings, we feel bound to assume that the answer missing from the files was appropriately framed for putting in issue such question of ownership; and in view of the interests involved and the gross miscarriage of justice that might otherwise be occasioned, we think the parties rightly considered themselves estopped from claiming that the missing answer did not in fact, as the finding of the court below assumes, legally put in issue in the former action the question of ownership whose adjudication as a fact then in issue they have argued before us in this action. We refer to the subject only for the purpose of excluding any implication that we should consider the fact of ownership an issue presented by the pleadings, as distinguished from a mere evidential fact, did the record before us present the case of a trial upon the complaint and general issue alone. The question is not raised.

The record shows the following facts:—

Prior to bringing the action the Steamboat Company was in possession of a portion of the flats bounded northerly by Water street, easterly by the flats in possession of such company, southerly by the flats upon which it claimed the right to wharf out, and westerly by the flats included between the lines of East street extended; being about eighty-three feet on Water street and on the flats to the south, and two hundred and thirty-one feet on the easterly line of East street extended and on the flats to the east in possession of the company; and Sargent and Co. was in possession of a portion of the flats bounded north by Water street one hundred and thirty-two feet; and east by the flats lying within the lines of East street extended, one hundred and sixty-five feet. The deeds purporting to convey the title to these two pieces of flats were from the authorities of the town of New Haven; the first to the Steamboat Company's predecessor

in title, being in 1807, and to that of Sargent and Company, in 1772. The flats in possession of Sargent and Company as well as those in possession of the Steamboat Company, had been reclaimed by filling in out to the southerly boundary lines. Sargent and Company also owned a piece of land lying north of Water street, bounded east by East street, and south by Water street, title to which was derived originally from a deed from the authorities of the town of New Haven in 1771. In 1872 the city of New Haven completed the construction of the East street sewer, extending from the southerly line of Water street and nearly at right angles to that line beyond the low water-mark, and covered this sewer, partly as a protection, by a structure known as the East street Sewer Wharf, extending beyond the southerly line of the Steamboat Company's reclaimed flats about three hundred and twenty-five feet to a point about seventy-five feet northerly of the low water-mark. In building the sewer the city occupied a portion of the flats lying between the lines of East street extended ; also a portion of the flats reclaimed by the Steamboat Company, and a portion of the flats lying southerly of the land so reclaimed. The city of New Haven claimed rights in the city and town to some control of these flats, and especially of East street Sewer Wharf, but no attempt to ascertain or enforce such rights had been made, beyond an application by the city to the legislature for permission to extend the wharf, which was denied. In 1881 Sargent and Company collected wharfage amounting to five dollars, for the use of the East street Sewer Wharf at a point marked $S$ on the map, as indicating the position of the ship on account of which the wharfage was collected, which point is about sixty feet from the southerly end of the wharf structure, and opposite the intersection of its westerly line with the east line of East street extended. The action of the Steamboat Company was brought to recover the sum so collected, and the right to the ownership and possession of the wharf at such point was claimed by both parties. The following map shows the situation.

Sargent & Co. *v.* New Haven Steamboat Co.

Line A to B—East line of East Street extended, being line claimed by Steamboat Co.

Line C to D—West line of East Street, extended.

Line H, E, F, G—Includes demanded premises.

Line C to I—Line run in most direct course to deep water channel, being line claimed by Sargent & Co.

So much appears from the record affirmatively by direct assertion. The ownership and right of possession of the East street Sewer Wharf at the point indicated, was the real, substantial and main issue between the parties, just as truly and fully as if such ownership had been distinctly set out in the complaint as the basis of the plaintiff's right of action, and distinctly denied in the defendant's answer. But the record goes further. The ownership of the wharf at the point indicated depends upon the title of the plaintiff which establishes such ownership; indeed, in this case the validity of the title is essentially the same question as the ownership. Now the record shows that the title and the only title by which the plaintiff can establish such ownership, is its right as a riparian proprietor, by virtue of the ownership of its reclaimed land, to wharf out from the southerly line of that land towards the low water-mark; and upon a careful analysis of the whole record of the Court of Common Pleas, we think that record also shows that the only direction of riparian extension establishing such ownership consistent with the facts of the record, is one by which the westerly line of the flats covered by such right shall extend from the south-westerly corner of the reclaimed land, through the point where the westerly line of the East street Sewer Wharf intersects the easterly line of East street extended. The line corresponding with this condition is the easterly line of East street extended. We find therefore, that the necessary conclusion from the facts spread upon the record of the former action is that the principal and essential issue tried and determined in that action was the question, did the Steamboat Company, as owner of the reclaimed land, have the right to extend its wharf from that land towards low water, in a direction which gave as the westerly boundary of such extension a line corresponding with the line of East street extended? The determination of that issue necessarily determined the judgment in that action, and the judgment adjudicated that question; so that it became, as between the parties to the action, *res judicata*.

This conclusion from the record is confirmed, if there were

need of confirmation, by the claims of counsel in the former action, as shown by their printed briefs. These briefs, with the maps attached thereto, were introduced in evidence in the present case by the Steamboat Company in support of the second defense, and appear in the finding of facts. An examination of the briefs shows that the Steamboat Company founds its right of action upon its ownership of the reclaimed wharf land, bounded west by the easterly line of East street extended, and maintains that, being the owner of that land, the extension of its wharf in the same direction with its original construction—the easterly line of East street extended—is a fair, just and reasonable enjoyment of its rights as wharf owner, and within the principles of the rules applicable to such cases.

Sargent and Company deny the right of action. First, because the Steamboat Company is not legal owner of the flats as claimed, and if owner, has as such owner no right whatever to any extension. Second, because the rule of extension in this case calls for a direct line to the deep water channel. And, in illustration of the claims of the parties respectively, attaches to its brief a map showing the effect of the line of East street extended, as claimed by the Steamboat Company, and the line to the deep water channel, as claimed by Sargent and Company; and in the supplementary brief replying to the brief of the Steamboat Company, insists that the Steamboat Company's claim of the line of East street extended would work injustice if applied to all the upland holders; and also, that it cannot be maintained, because Sargent and Company's title to the uplands antedates that of the Steamboat Company, and therefore the Steamboat Company's rights, whatever they may be, are subordinate to the right of Sargent and Company, *i. e.*, the right to extend in a direct line to deep water channel, which right was incident to the ownership of the lot of land on the north side of Water street purchased in 1771, and had never been lost by estoppel or otherwise, as claimed by the Steamboat Company.

It is impossible to examine this record, whether by itself

or in connection with the briefs of counsel, without being fully satisfied that the issue in the present case, viz: the right of the Steamboat Company as against Sargent and Company, to extend its wharf towards low water-mark, in a direction bounded westerly by a line running from the south-west corner of its reclaimed land, and corresponding with the line of East street extended, is the very issue presented, tried, and determined in the former suit. This was the issue presented by the Steamboat Company as conclusive of its right of action. The issue presented was not merely the general rule of law as applicable to a fair and equitable division of the whole shore of the harbor, but a right to extend in a specific line, which was the only line claimed by the plaintiff, and so far as the record shows, the only line claimed by either party, that would entitle the Steamboat Company to recover in its action. This issue was accepted by Sargent and Company, and that company attacked this precise claim of the Steamboat Company in several ways, and in every way it saw fit. It had then its " day in court" upon this issue. The determination of the issue included many considerations of fact and law ; the title of the Steamboat Company to any upland, and to the reclaimed land ; its title to any riparian rights ; the title of Sargent and Company, as an upland proprietor with riparian right, to extend in a direct line to the deep water channel, which line included not only the *locus in quo*, but also a portion of the Steamboat Company's land, and which right ante-dated and was therefore paramount to the rights of the Steamboat Company, whatever they might be ; questions of adverse possession and abandonment ; vested rights acquired in the shore which was more or less covered by wharves ; rights of the public to the shore in the line of streets leading to the harbor ; the general rules of law applicable to the division of the shore, and the modification of such general rules in their application to the precise claim of the Steamboat Company under the circumstances of the case. Some of these questions were necessarily involved in the judgment, and some were not ; but the record demonstrates that the judgment

necessarily involved the adjudication of the precise claim affirmed by the plaintiff and denied by the defendant, that in view of all the facts offered in evidence, and of all the claims of law made by the parties, the Steamboat Company, as against Sargent and Company, had the right to extend its wharf to low water-mark by the easterly line of East street extended. This is the particular matter sought to be concluded in the present case.

The law on this point is settled beyond controversy. In *Supples* v. *Cannon*, 44 Conn., 429, Judge PARDEE formulates the rule as stated in *Washington Packet Co.* v. *Sickles*, 5 Wall., 592, as follows: "To render the judgment conclusive it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined; that is, that the verdict in the suit could not have been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the verdict and judgment necessarily involved the consideration and determination of the matter." In *Munson* v. *Munson*, 30 Conn., 433, Judge BUTLER says: "It is an established rule in the administration of justice that all controversies between parties once litigated and fully and impartially determined shall cease; and to that end, that no fact involved in such litigated controversy shown by the record to have been material to its determination, and to have been put in issue and decided, whether the proceeding was at law or in equity, shall again be litigated between the same parties or their privies." And in *Huntley* v. *Holt*, 59 Conn., 103, these cases are affirmed, and the court adopts the rule as laid down in *Pray* v. *Hegeman*, 98 New York, 358: "It is not necessary to the conclusiveness of a former judgment that issue should have been taken upon the precise point controverted in the second action. Whatever is necessarily implied in the former decision is for the purpose of estoppel deemed to have been actually decided."

The rule of *res judicata* does not rest wholly on the narrow ground of a technical estoppel, nor on the presumption that the former judgment was right and just; but on the

broad ground of public policy, that requires a limit to liti-
gation, a curb to the litigiousness of the obstinate litigant.
Like the statute of limitations, it is a rule of rest.   As ex-
pressed by Judge PARDEE in *Supples* v. *Cannon, supra :*
" The policy of the law is, that if a claim has once been passed
upon by a court of competent jurisdiction, it shall not there-
after be controverted between the same parties, and this in
the interest of peace."

The question therefore, upon the plea of *res judicata* is,
has the matter once been passed upon by a court of compe-
tent jurisdiction.   The correctness or justice of the former
decision is not necessarily relevant to the determination of
that question, and is immaterial if the record clearly shows
that the matter has been so passed upon.

The law is so clear, and the conclusion from the record
that the determination of the precise point now controverted
is necessarily implied in the decision of the former action is
so plain, that the present plaintiff would hardly have ques-
tioned the adjudication, in view of the record of the Court
of Common Pleas and of the briefs of counsel, had no other
consideration intervened.   And indeed the argument of the
plaintiff deals very slightly with the significant facts of the
record, but is mainly concerned with the contention that
the opinion of this court upon the reservation in the former
action, (*New Haven Steamboat Co.* v. *Sargent & Co.*, 50 Conn.,
199,) demonstrates that the point now controverted was not
adjudicated; or at least leaves the precise nature of the adju-
dication so doubtful, that the former judgment in relation
to the controverted point is lacking in that certainty which
is essential to its operation as an estoppel; and that the
opinion of the court, although it may conflict with the nec-
essary implications of the record of the Court of Common
Pleas, is paramount and decisive of the matters actually
submitted by the parties, tried by the lower court, and deter-
mined by its judgment.   And this contention seems to be
pressed upon the theory that the judgment of the Court of
Common Pleas, given in pursuance of the advice of the Su-
preme Court of Errors, is practically the judgment of the

higher court, and that the opinion of that court is a part of
the record in the action, and conclusive as to the points
actually decided.

We think such a theory, with the contention based upon
it, cannot be maintained. A reservation under our practice
is an anomalous proceeding. Originally a voluntary and
informal consultation, it was regulated by rule of court and
remained without legislative sanction until 1855, when an
Act was passed requiring the court asking the advice to
follow in its judgment the advice given. And subsequent
to the passage of that Act the peculiar nature of the pro-
ceeding was fully considered in *Nichols* v. *Bridgeport*, 27
Conn., 466; and in 1877 the Act of 1855 was altered into
substantially its present form (General Statutes § 1114),
which not only requires the trial court to render judgment
in accordance with the advice given, but forbids it to ask
advice unless with the consent of all the parties to the record.
There is no occasion to determine whether the recitals and
reasoning of this court in an opinion given in a case reserved
for its advice, can be considered as entitled to the same
regard as if found in one given upon a formal judgment in
a proceeding for correction of errors; for treating the opinion
cited as a record of which we may take judicial notice in
this case, and giving it all the legal effect that can rightly
be claimed for it, in explaining or supplementing the record
of the Court of Common Pleas, we think its language is
consistent with the conclusion that must be drawn from the
record of the lower court as to the litigated question of title
which all parties admit was in fact tried before that court
under the pleadings in the former action.

We think the opinion in question shows that the court
looked upon the right claimed by the Steamboat Company
to extend its wharf to low water-mark on the line of the
shore already reclaimed and occupied by it, which is the
easterly line of East street extended, as a question decisive
of the right of action, and that all the reasoning of the opin-
ion from the first statement of the issue to the final advice
of judgment for the Steamboat Company was intended to

support the conclusion reached, *i. e.*, that under all the circumstances of the case the continuance of the extension on that line would effect an equal division of the flats in a manner not obnoxious to any rule hitherto established.

The plaintiff selects a single phrase in the opinion: "We think in this case each party has the right to extend his upland in the most direct course to the line of low water," and claims that this phrase dominates the whole opinion. That by "the most direct course" as used in the phrase, the court meant a specific line from one of two points on the Steamboat Company's land to such point on any slight deflection of the low water-mark from its general course as a civil engineer should find was mathematically nearest to the starting point; that "the most direct course" as thus defined diverges from the easterly line of East street extended, so far as to leave nearly the whole of the Sewer Wharf, the sole ownership of which the opinion treats as the precise point at issue, westerly of the plaintiff's right of extension, and that this expression, as defined by the plaintiff, is the "deliberate, decisive and definite adjudication" in the case. This phrase, read in its proper connection with the remainder of the opinion, does not establish such a claim.

As we have already seen, the claim of the Steamboat Company and the claim essential to the determination of its right of action, was its right to extend its occupation of the flats on the line of its existing occupation, a specific line marked on the maps of the plaintiff. This claim was attacked, first on the ground that the Steamboat Company had no right of extension of any kind; second that its rights, whatever they might be, were subordinate to the right of Sargent and Company to extend by a line in a direct course to the deep water channel, a specific line marked on the maps of the defendant; and it was directly attacked on no other ground. The main part of the opinion is taken up with disposing of the first ground of attack. That question disposed of in favor of the Steamboat Company, the court deals very briefly with the second ground of attack, and argues that

the application of the principle invoked by Sargent and Company depends upon circumstances, and may conflict with the principle applicable to the division of the shore in cases relating to low water line, and does so conflict where, as in this case, the lines of the channel and of low water-mark are divergent. In such a case, one must be adopted as the line to be reached to the exclusion of the other. And in this case the line to be reached in the division of the flats is the low water-mark, and each party has the right to extend its upland in the most direct course to that line, and as shown in the discussion of title in the former part of the opinion, the parties for more than thirty years have practically adopted that rule, to wit, extension to the line of low water-mark to the exclusion of the line of the channel. The Steamboat Company has extended its wharf in that direction fourteen rods, and no adverse right has been asserted by any one; " to change the direction now would produce great confusion, while a continuance of the line as begun will effect an equal division of the flats and in a manner not obnoxious to any just rule hitherto established;" and as a result of this line of argument running through the whole opinion, it follows that judgment should be rendered for the Steamboat Company. Undoubtedly the phraseology of the opinion would have been more definite could it have been anticipated that within a dozen years the parties would again attempt to litigate the very question necessarily settled by the decision. It is however, sufficiently plain from the whole language of the opinion, that the true implication of the words : " We think in this case, each party has the right to extend its line in the most direct course to the line of low water," is an assertion that in the case under consideration the general rule applicable to a division of flats called for the extension of the upland to low water-mark and not to the deep water channel, and is not a specification of the western boundary of the Steamboat Company's right of extension. That precise line depended upon the application of the general rule in connection with specific facts before the court, and is described in the opinion as the continuance

to low water-mark, of the westerly boundary of the reclaimed flats; and it is also evident both from the maps that were before the court as a part of the case presented, and from the language of the opinion, that the court understood that the specific line claimed by the Steamboat Company and necessarily involved in the judgment advised, might diverge more or less from the exact line of the most direct course to low water-mark. And in sustaining the line so claimed, the court considered not only the general rule of extension but also the particular facts controlling its application. It is immaterial now whether or not such divergence was really greater than the facts before the court indicated. The essential facts in issue in the former action involved the determination of the boundary of the flats appurtenant to the reclaimed flats belonging to the Steamboat Company, a question of detail often attended with great difficulty, and in this case rendered more difficult by the complications involved in the situation of the flats, the claims of vested rights from long occupation, and abandonment of adverse claims, as well as the peculiar nature of the title in evidence. The opinion does not purport to deal definitely with all the questions involved, but only to state reasons deemed sufficient for holding upon the facts before the court that the title to the boundary claimed by the Steamboat Company is valid as against Sargent and Company; and as bearing on the question whether the validity of such title was presented, tried and determined, and necessarily implied in the judgment rendered, the opinion is not in conflict, but consistent, with the record.

It is, however, unnecessary to pursue this discussion, for the record, whether taken by itself, or in connection with the facts extrinsic to it, found by the court below, unquestionably shows that the matter now controverted must necessarily have been decided before the judgment which was rendered could have been rendered, and in such case even if there were plausible grounds for the plaintiff's claim of inconsistency, it is immaterial to explain an expression in the opinion of the court claimed to indicate that this precise

point was not decided.  *Laiard* v. *De Soto*, 32 Fed. Rep., 650.

We find, therefore, that the court below did not err in adjudging that by the prior adjudication the title to so much of the demanded premises as lie east of the easterly line of East street extended was in the defendant.  This disposes of the main controversy between the parties.

But the plaintiff's appeal also claims that the court below erred in holding that by the prior adjudication the plaintiff was barred from recovering any portion of the demanded premises.  It appears that the trial court, upon consideration of the record in the former action in connection with all the facts proved, found as a fact that upon the trial in the former action the court fixed and intended to fix the east line of East street extended as the west boundary of the defendant's, the Steamboat Company's, rights over the flats. We think this finding if treated as a conclusion of law is right; and if treated as a conclusion of fact it cannot be reviewed.  It does not appear that the court below finds as a fact that upon the former trial the court fixed and intended to fix the west line of East street extended as the east boundary of Sargent and Company's rights over the flats; and we think the court below was clearly right in not making such a finding.

It further appears that the plaintiff claimed as a matter of law upon the facts found by the court, that the judgment described in the second defense did not constitute a bar to any recovery by the plaintiff in this action.  But the court overruled this claim and held that "said judgment fixed the east line of East street extended as the defendant's western boundary line, and that said judgment was a bar to any recovery by the plaintiff in this action."  The conclusion of law that the judgment was a bar to any recovery was erroneous.  It is very clear from the facts found that the determination of the actual eastern boundary of Sargent and Company's land was not directly in issue, and not necessarily implied in the judgment in the former action.  In that action it was not necessary for Sargent and Company to prove any

title. Its defense was complete upon the failure of the Steamboat Company to prove its title. The eastern boundary of its land was not material, except so far as it might conflict with the boundary established for the Steamboat Company. And the only question relating to Sargent and Company's rights adjudicated in the former action is that its boundary as against the Steamboat Company does not extend easterly of the east line of East street extended. The plaintiff therefore, was not estopped by the judgment in the former action from claiming title in this action to that portion of the demanded premises lying westerly of the east line of East street extended, and the court erred in overruling the claim of the plaintiff, and in rendering judgment in bar of the plaintiff's whole action.

We do not see how we can treat this error as immaterial, even if it be true as claimed by the defendant that it is apparent the same facts and law which establish the defendant's westerly boundary as the east line of East street extended, must result in establishing the plaintiff's east boundary as the west line of East street extended, and that there will be no actual controversy over the remaining cause of action. However that may be, the question had not been adjudicated as between these parties.

There is nothing requiring discussion in the other assignments of error. The plaintiff excepted to the incorporation of some facts in the finding of facts by the court below, and to the refusal of the court to incorporate other facts. We think the finding fairly presents for review all questions of law raised and decided on the trial, contains no matter that injuriously affects the presentation of the plaintiff's case, and does not call for any correction authorized by § 1132 of the General Statutes, and chapter CLXXIV. of the Public Acts of 1893. These exceptions of the plaintiff cannot be considered for any other purpose. *Styles* v. *Tyler*, 64 Conn., 432.

The defendant objected to the admission of certain evidence offered by the plaintiff, extrinsic to the record of the former action. The court ruled said evidence to be admissible "for the purpose of identifying the subject-matter of the

two suits, and of determining what was involved in said adjudication by the Court of Common Pleas, and for the purpose of ascertaining whether by said adjudication said court had fixed the extension of the east line of East street as the western boundary of the defendant's property rights over said flats, but not for the purpose of showing that said decision was erroneous or unjust." Whatever the grounds of the defendant's objections may be, the plaintiff certainly has no reason to complain of this ruling.

The court below did not err in deciding the main issue presented by the second defense in favor of the defendant; but did err in holding that the judgment in the former action is a bar to any recovery by the plaintiff in the present action.

There is error in the judgment of the Superior Court, in holding that the plaintiff's right of action as to so much of the demanded premises as lie west of the east line of East street extended is barred by the judgment described in the second defense; and a new trial is granted, limited to that portion of the demanded premises.

In this opinion the other judges concurred, except AN-DREWS, C. J., who dissented.

ANDREWS, C. J., (dissenting). I concur in the opinion so far as it holds that there is error in the judgment of the Superior Court, and that there must be a new trial. But I dissent from so much of the opinion as proceeds upon the assumption that title to any part of the demanded premises was in issue in the cause tried in the Court of Common Pleas.

A matter is "in issue" so as to be included in the estoppel of a judgment, only when it is alleged in the pleadings —affirmed on the one side and denied on the other—and is decided by the judgment. It is not necessary that the matter should be directly alleged; it is sufficient if it be a component part of a general allegation. Whenever pleadings are general and include more than one matter, parol evidence is admissible to show that any particular matter so included, was or was not heard and decided at the trial. In applying

or explaining a former judgment to ascertain whether or not it is identical with a case in hand this is the full extent to which parol evidence may be used. I understand the opinion to recognize this rule. And, as the pleadings in the former case here involved do not contain any allegation of title, nor any allegation of which a component part is an averment of title, the court proceeds to supply such averment by its own fiat; by presuming "that the answer missing from the files was appropriately framed for putting in issue such question of ownership"; and does this without so much as a single word in the finding to indicate that there had ever been such an answer, or any answer whatever, which could be missed from the files. From this I dissent.