JOHN O. OSTERLUND v. STATE OF CONNECTICUT

MALTBIE, C. J., BROWN, JENNINGS, ELLS and O'SULLIVAN, JS.

Argued January 6—decided May 3, 1949.

*John O. Osterlund,* pro se, the appellant (plaintiff).

*Thomas J. Conroy,* assistant attorney general, for the appellee (defendant).

MALTBIE, C. J.   The plaintiff has appealed from the dismissal of an appeal taken by him from the denial by a workmen's compensation commissioner of a motion in which the plaintiff sought to have the weekly rate of compensation previously awarded him increased, to secure a finding that he was totally incapacitated, and to obtain other relief.

In order to understand the issues before us, it is necessary to trace from their inception the proceedings brought by the plaintiff to secure compensation.  The original award, made on March 30, 1940, and on file in the office of the clerk of the Superior Court in Hartford County, states these facts:  In November, 1939, the state was maintaining a sanatorium in the town of Newington.  A fire occurred in one of the outbuildings and it became necessary to construct a new roof and make other repairs.  The carpenters regularly employed at the sanatorium were not available for this work and the superintendent made a contract with John C. Smith to do it.  The plaintiff was employed by Smith as a carpenter.  On January 9, 1940, he fell with a staging on which he was working and sustained a fracture of the left heel which resulted in his total incapacity.  Under the provisions of General Statutes, Rev. 1930, § 5230 (Rev. 1949, § 7423), the defendant was liable to pay compensation as a principal contractor.  The plaintiff had been working for less than a net period of two calendar weeks and consequently his rate of compensation would be based on "the average weekly wage prevailing in the same or similar employment in the same locality at the time of injury."  General Statutes, Rev. 1930, § 5238 (Rev. 1949, § 7432).  The average weekly wage for carpenters prevailing in Newington was $35.  The commissioner for the first district awarded compensation for total incapacity at the rate of $17.50 a week until it was shown that the

plaintiff's incapacity had decreased or ceased. No appeal was taken from this award.

On January 15, 1941, a further hearing was had by the commissioner for the second district, designated to act for the commissioner for the first district, upon a motion by the plaintiff for an increase in compensation and a change of doctors. The commissioner found that there was no ground for increasing the compensation or for a change of doctors; he further found that maximum improvement in the heel had been reached and, upon the basis of a 50 per cent permanent partial loss of function, awarded compensation for seventy-eight weeks at the rate of $17.50 a week. From that award the plaintiff appealed to the Superior Court and, from the dismissal of that appeal, to this court. *Osterlund* v. *State,* 129 Conn. 591, 30 A. 2d 393. We found no error in the ruling denying the part of the motion in which the plaintiff sought a change of doctors; we reviewed the testimony offered by the plaintiff upon his claim for an increase in compensation and stated (p. 596) that "we would hesitate to hold" that the commissioner acted erroneously in denying an increase; we held, however, that the commissioner erred in making an award for permanent partial loss of function of the foot when no such issue was raised by the plaintiff's motion. We remanded the case to the Superior Court with direction to sustain the appeal and return it to the commissioner "for further proceedings according to law."

We decided the case in February, 1943. On September 17, 1943, judgment was rendered in the Superior Court in accordance with the mandate from this court. The effect of that judgment was that the award of the commissioner was set aside in its entirety and the matter stood before the commissioner for further proceedings upon the motion upon which that award had been based. *McIsaac* v. *Hale,* 105 Conn. 249, 250, 135 A.

37; *Bishop* v. *Meriden,* 117 Conn. 499, 504, 169 A. 41. Instead, however, of pursuing that motion, the plaintiff made another motion, and from the award upon it the appeal now before us was taken. In this motion he again sought an increase in his weekly compensation rate and, in addition, a finding of total disability and a lump sum settlement. The commissioner for the fourth district, designated to act for the commissioner for the first district, denied any increase in compensation; he found a permanent partial loss of function of the foot entitling the plaintiff to compensation for 93.6 weeks; but, as the defendant had paid compensation to the plaintiff for 78 weeks under the former award, the commissioner found him entitled to further compensation only for a period of 15.6 weeks and directed that the amount due be paid in a lump sum.

We consider first the claim of the plaintiff that the commissioner erred in refusing an increase in the weekly rate of compensation. The commissioner found that no new evidence was offered in support of the claim but that his attention had been called to two letters offered at the previous hearing to which we shall later refer; and he concluded that the average weekly wage prevailing for carpenters in Newington had become res adjudicata by our decision in *Osterlund* v. *State,* supra, in which, he stated, we held that the denial of an increase by the commissioner upon the motion then before us was not erroneous. This statement, as appears from what we have said above, was inaccurate. Aside from that, a decision of this court does not make res adjudicata any issue of fact involved in it; it is the judgment of the tribunal from which an appeal is taken which, if affirmed by us or rendered in conformity to a decision we make, conclusively determines any such issues. *Sargent & Co.* v. *New Haven Steamboat Co.,* 65 Conn. 116, 127, 31 A. 543; *Nichols* v. *Wentz,*

78 Conn. 429, 438, 62 A. 610. The setting aside of the award made on the motion then before us destroyed the effect of that award as concluding any issue of fact, and, when the issues involved in the present appeal were considered, the plaintiff was entitled to a decision regardless of that award.

The plaintiff bases his claim that the rate of compensation should be increased upon the provisions of General Statutes, Cum. Sup. 1939, § 793e (Rev. 1949, § 7372), and upon the two letters to which we have referred. The statute provides: Every contract for the construction or repair of a public building by the state shall contain a provision that the wages paid to any workman employed on the work shall be equal to the rate of wages customary or prevailing for the same work in the same trade or occupation in the town in which the building is located; any person who knowingly or wilfully employs a workman for any public building for or on behalf of the state or any of its agents at a less wage is subject to a fine; the governor is directed to appoint a labor board, and, at any required time, it is directed to hold a hearing and determine the prevailing rate of wages in any town where such a building is being constructed or repaired and establish a classification of skilled, semiskilled and ordinary labor. The statute specifically provides: "The rate so established shall, at all times, be considered as the minimum rate for the classification for which it was established." One of the letters in evidence before the commissioner was from the chief of contracts in the state department of public works, then in existence; it was dated October 25, 1940, and stated that the department did not have any work done at the sanatorium during January, 1940, and, therefore, had no wage scales for that month, but that the wage scales for July and September were $1.125 an hour. This letter would

in itself go at most no further than to afford some evidence to be considered by the commissioner in determining the rate of wages in Newington during the preceding January. However, the other letter, dated November 19, 1940, was from the secretary of the state labor wage board, and it stated that the rate of pay of carpenters in Newington established by the board had been $1.125 an hour "for the last two years." No objection was made to the letter as incompetent to evidence the fact stated; the statutes provide that a compensation commissioner is not bound by ordinary common-law or statutory rules of evidence; General Statutes, Rev. 1930, § 5250 (Rev. 1949, § 7447); and the commissioner, in the absence of other evidence, could hardly do otherwise than accept the statement in the letter as credible.

Nothing in the records before us indicates that the state has ever claimed that the superintendent of the sanatorium did not have authority on behalf of the state to make the contract in pursuance of which the plaintiff was working or that the building, a part of an institution owned and operated by the state, was not a "public building," as that word is used in the statute. The intention of the legislature was that every person employed in pursuance of a contract within the provisions of § 793e should receive at least the pay determined by the wage labor board to be the prevailing wage in the town for like work; and, where an employee is working under a contract which, as to the rate of pay agreed upon, violates the statute, or which fails to provide for pay at least equal to the prevailing wages as fixed by the board, the state is in no position to claim that, if he is injured, compensation should not be based on the prevailing wage as so determined.

The commissioner should have determined whether the plaintiff was entitled to an increase of compensa-

tion, in accordance with the considerations we have stated and regardless of the decision on the former motion. We come to this conclusion with less reluctance because we may have misled the commissioner in our decision in *Osterlund* v. *State,* supra. We there referred (p. 596) to the letter from the labor wage board as stating that the prevailing wage of $1.125 an hour was in effect on November 19, 1940, overlooking the further statement in it that this had been the established wage "for the last two years."

The commissioner concluded that the plaintiff had a 60 per cent permanent partial loss of use of his left foot entitling him to compensation for 93.6 weeks. The conclusion was based on a finding of these facts: A doctor who had examined the plaintiff's foot before the hearing had found a 60 per cent permanent partial loss of function. The plaintiff had been employed from June 3, 1942, to July 24, 1943, at a weekly wage in excess of $35; he then stopped work for a time because of eye trouble; from August 12, 1943, to July 10, 1945, he worked steadily at a weekly wage substantially in excess of $35; during a period in the latter part of 1945 he had applied for and received unemployment compensation, and in April, 1946, he had again applied for such compensation, in both instances basing his application upon his own declaration that he was available for work. The commissioner then stated: "The claimant has therefore amply demonstrated that he is not totally disabled. . . ." The plaintiff does not question the commissioner's findings of fact.

Our statute uses the words "total incapacity to work." General Statutes, Rev. 1930, § 5236 (Rev. 1949, § 7430). That means, not the employee's inability to work at his customary calling, but the destruction of his capacity to earn in that or any other occupation which he can reasonably pursue. *Michna* v. *Collins*

*Co.*, 116 Conn. 193, 196, 164 A. 502; see *Ferrara* v. *Clifton Wright Hat Co.*, 125 Conn. 140, 141, 3 A. 2d 842. While there are decisions in other jurisdictions not in harmony with this conclusion, the weight of authority supports it. *Cleland* v. *Verona Radio, Inc.*, 130 N. J. L. 588, 595, 33 A. 2d 712; *Frennier's Case*, 318 Mass. 635, 639, 63 N. E. 2d 461; *Connelly's Case*, 122 Me. 289, 291, 119 A. 664; *Elliott* v. *Gooch Feed Mill Co.*, 147 Neb. 309, 316, 23 N. W. 2d 262; *Crockett* v. *Coppins & Sons*, 202 App. Div. 535, 536, 195 N. Y. S. 153. We have said: "The plaintiff's labor must be unmarketable because of conditions resulting from his injury; he must exercise reasonable diligence to obtain employment; he must not refuse or neglect, without adequate excuse, to use such powers as remain to him, or decline employment reasonably within his capacity to perform." *Reilley* v. *Carroll*, 110 Conn. 282, 286, 147 A. 818; see *Rakiec* v. *New Haven Wrecking Co.*, 112 Conn. 432, 434, 152 A. 401. We cannot accept a claim of the plaintiff that his incapacity to work as a carpenter would of itself show that he is totally disabled.

In the conclusion of the commissioner implicit in his award that the plaintiff was not totally incapacitated, he clearly gave great weight to the fact that, in applying for unemployment compensation, the plaintiff had declared his availability for work. In so doing the commissioner misconstrued the significance of the words of the statute "total incapacity to work." A finding that an employee is able to work at some gainful occupation within his reasonable capacities is not in all cases conclusive that he is not totally incapacitated. If, though he can do such work, his physical condition due to his injury is such that he cannot in the exercise of reasonable diligence find an employer who will employ him, he is just as much totally incapacitated as though he

could not work at all. *Reilley* v. *Carroll,* supra; *Matter of Jordan* v. *Decorative Co.,* 230 N. Y. 522, 525, 130 N. E. 634; *Kadykowski* v. *Briggs Mfg. Co.,* 304 Mich. 503, 506, 8 N. W. 2d 154; note, 33 A. L. R. 115. As the Supreme Judicial Court of Massachusetts trenchantly states: "On principle, when one is unable to obtain other employment because of visible, physical results of an industrial accident, that person's earning capacity is as much impaired as if he were physically disabled to the extent that he could do no work." *Fennell's Case,* 289 Mass. 89, 94, 193 N. E. 885. The fact that the plaintiff had sought and received unemployment compensation on the ground that, though available for work, he had made reasonable efforts to obtain it and been unable to do so was not in itself evidence that he was only partially incapacitated; it might have been as readily explainable on the ground that employment had been refused him because of the effects of his injury as that there were no opportunities for work of the kind he could do available to persons of sound physical condition; indeed, if the former was true, the evidence would help to support a conclusion that he was totally disabled. The finding of the commissioner that the plaintiff was not totally incapacitated is vitiated by his erroneously including among the grounds upon which it rests an element which did not support it. *Reiley* v. *Healey,* 122 Conn. 64, 72, 187 A. 661.

In his assignments of error the plaintiff also claims that he has been denied the benefit of the "Rehabilitation Statutes" and that he has not been placed "in Remunerative occupation to earn his living as provided by Law." His brief shows that the statutes he refers to are §§ 869 et seq. of the General Statutes, Rev. 1930, as amended (Rev. 1949, § 1409 et seq.). They provide for a rehabilitation service administered by the state board of education, with a provision that the board

and the workmen's compensation commission shall formulate a plan of co-operation for the rehabilitation service. Cum. Sup. 1939, § 255e (Rev. 1949, § 1410). We have found no regulations of either the board or the commission which impose any duty upon a workmen's compensation commissioner to take any action under these statutes. Nor does it appear of record that the motion to the commissioner involved in this action sought relief on this ground.

As was the situation in the former proceedings by the plaintiff which came before us in *Osterlund* v. *State,* 129 Conn. 591, 30 A. 2d 393, he, a layman, has prosecuted this case in his own behalf from its inception before the commissioner. We have now, as we did then, followed a liberal policy in considering his claims so far as they are fairly disclosed upon the record. We repeat that this accords with the attitude of the assistant attorney general appearing for the defendant, who has expressed his desire that the plaintiff have every advantage to which in justice he is entitled. The former, for example, has raised no question in this or the preceding case as to the sufficiency, from a procedural standpoint, of the motions made by the plaintiff to raise the issues he desires to present. The plaintiff's unfamiliarity with proper procedure has, however, placed an undue burden upon the commissioner and the courts, and, should the plaintiff persist in the course he has adopted of not availing himself of the assistance of a trained practitioner, we shall hesitate to blame the commissioner for holding him to the established requirements of that procedure.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to sustain the appeal and remand the case to the compensation commissioner for the first district to be proceeded with according to law.

In this opinion BROWN, ELLS and O'SULLIVAN, Js., concurred; JENNINGS, J., concurred in the result.