RADA BIDOAE *v*. HARTFORD GOLF CLUB ET AL.
(AC 25603)

Lavery, C. J., and DiPentima and Gruendel, Js.

Argued June 2—officially released September 20, 2005

*Neil Johnson,* for the appellant (plaintiff).

*Joseph J. Passaretti, Jr.,* with whom was *Dominick C. Statile,* for the appellees (defendants).

### Opinion

LAVERY, C. J. The plaintiff, Rada Bidoae, appeals from the decision of the workers' compensation review board (board) affirming the determination by the workers' compensation commissioner (commissioner) that she was not entitled to benefits pursuant to General Statutes § 31-307. On appeal, the plaintiff maintains that the board improperly affirmed the commissioner's decision (1) to compel the plaintiff to undergo a vocational

rehabilitation examination by a nonphysician and its subsequent decision to exclude evidence from her own vocational rehabilitation specialist, (2) that opinions by the Social Security Administration are not binding on the workers' compensation commission (commission) and (3) that the plaintiff had not sustained her burden of proving her total incapacity. We affirm the decision of the board.

On or about May 30, 1999, while working for the defendant employer,[1] the Hartford Golf Club, the plaintiff sustained a compensable injury to her back. She initially was treated by the Connecticut Multispeciality Group, where she was diagnosed with an acute low back sprain and lumbar spondylosis. A magnetic resonance imaging procedure was performed on June 27, 1999, which revealed a small disc herniation. The plaintiff received follow-up care by Albert Casale, a physician, who placed the plaintiff out of work on June 22, 1999, but then released her to a light-sedentary duty work capacity on July 20, 1999. In the fall of 1999, Casale increased her work restrictions to encompass no excessive bending and a ten pound weight restriction. The plaintiff also received epidural injections at Saint Francis Hospital and Medical Center in Hartford.

The plaintiff was then treated by W. Jay Krompinger, a physician, who opined that the plaintiff had a light-sedentary duty work capacity, and she eventually was discharged after achieving maximum medical improvement. On August 8, 2000, Krompinger found that the plaintiff had an 8 percent permanent partial impairment to her back. He diagnosed her with central back pain secondary to a degeneration of her L5-S1 disc.

On September 18, 2000, the plaintiff underwent a vocational rehabilitation examination with Hank Ler-

---

[1] The employer's workers' compensation insurance carrier is also a defendant in this action.

ner, a nonphysician vocational rehabilitation specialist. The defendants requested that the plaintiff submit to their own vocational rehabilitation examination with David Soja, another nonphysician, but she refused. The defendants moved to compel the examination, and a formal hearing on the issue was held before the commissioner. On July 24, 2001, the commissioner ordered the plaintiff to undergo the defendants' vocational examination. He further ordered that if the plaintiff refused to submit to the examination, she would be precluded from entering evidence from her own vocational expert. The plaintiff appealed from that decision to the board, which affirmed the commissioner's decision. The plaintiff then appealed from the board's decision to this court, but we dismissed the appeal for lack of a final decision.

A formal hearing was held on April 2, 2003, regarding the plaintiff's claim of total incapacity. Testimony was heard and evidence was submitted, but Lerner's report was not admitted as a full exhibit pursuant to the July 24, 2001 order because the plaintiff never submitted to the defendants' vocational rehabilitation examination. On June 24, 2003, the commissioner found in favor of the defendants and dismissed the claim for total incapacity benefits. The plaintiff appealed from that decision to the board, which affirmed the commissioner's decision. This appeal followed.

The plaintiff's arguments rest on the proposition that the board improperly affirmed the decisions of the commissioner. We note that "[t]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the

law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Rogers* v. *Laidlaw Transit, Inc.*, 45 Conn. App. 204, 206, 695 A.2d 1071 (1997). "On appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award." *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 739, 774 A.2d 1009 (2001). We now turn to the plaintiff's arguments.

I

The plaintiff maintains that the board improperly affirmed the commissioner's decision to compel the plaintiff to undergo a vocational rehabilitation examination by a nonphysician and the commissioner's subsequent decision to exclude evidence from the plaintiff's own vocational rehabilitation expert because of her refusal to comply with the order. We disagree.

A

When the defendants attempted to compel the plaintiff to submit to an evaluation with their vocational rehabilitation expert, she refused, arguing that an independent medical examination with a nonphysician vocational rehabilitation specialist would be an invasion of her personal privacy as defined by General Statutes § 52-178a.[2] She contends that because a nonphysician vocational rehabilitation specialist does not practice a healing art under General Statutes § 20-1,[3] the commissioner cannot order such an examination.

---

[2] General Statutes § 52-178a provides: "In any action to recover damages for personal injuries, the court or judge may order the plaintiff to submit to a physical examination by one or more physicians or surgeons. No party may be compelled to undergo a physical examination by any physician to whom he objects in writing submitted to the court or judge."

[3] General Statutes § 20-1 defines "healing arts" as "the practice of medicine, chiropractic, podiatry, natureopathy and, except as used in chapters 384a and 388, and sections 19a-16a to 19a-16c, inclusive, the practice of optometry."

She argues that the commissioner cannot transcend his statutorily defined jurisdictional boundaries; see *Dowling* v. *Slotnik*, 244 Conn. 781, 800, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998); and absent specific authorization by the Workers' Compensation Act; General Statutes § 31-275 et seq.; a commissioner cannot order a plaintiff to submit to an examination by a nonphysician, such as a vocational rehabilitation specialist. We disagree.

"Ordinarily, [an appellate] court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *Burke* v. *Fleet National Bank*, 252 Conn. 1, 9–10, 742 A.2d 293 (1999). Whether General Statutes § 31-294f[4] precludes a commissioner from com-

---

[4] General Statutes § 31-294f (a) provides that "[a]n injured employee shall submit himself to examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. The examination shall be performed to determine the nature of the injury and the incapacity resulting from the injury. The physician or surgeon shall be selected by the employer from an approved list of physicians and surgeons prepared by the chairman of the Workers' Compensation Commission and shall be paid by the employer. At any examination requested by the employer or directed by the commissioner under this section, the injured employee shall be allowed to have in attendance any reputable practicing physician or surgeon that the employee obtains and pays for himself. The employee shall submit to all other physical examinations as required by this chapter.

pelling a plaintiff to submit to a vocational rehabilitation examination, conducted by a person who is not a physician, is a question that has not been previously subject to judicial consideration. As that novel issue presents a question of law, our review is plenary.

Although the plain language of § 31-294f authorizes physical or mental examinations "by a reputable practicing physician or surgeon,"[5] and the defendants' vocational rehabilitation expert is not a medical doctor, § 31-294f does not limit the equitable powers of the commissioner. General Statutes § 31-278 provides in relevant part that the commissioner "shall . . . have power to summon and examine under oath such witnesses, and may direct the production of, and examine or cause to be produced or examined, such books, records, vouchers, memoranda, documents, letters, contracts or other papers in relation to any matter at issue as he may find proper, and shall have the same powers in reference thereto as are vested in magistrates taking depositions and shall have the power to order depositions pursuant to section 52-148. He shall have power to certify to official acts and shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter. . . ." The commissioner's abilities are further expanded by General Statutes § 31-298, which provides in relevant part that "the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed

---

The refusal of an injured employee to submit himself to a reasonable examination under this section shall suspend his right to compensation during such refusal."

[5] General Statutes § 31-275 (17) provides that the definition of a physician "includes any person licensed and authorized to practice a healing art, as defined in section 20-1, and licensed under the provisions of chapters 370, 372 and 373 to practice in this state."

records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ."

One of the fundamental purposes of the commissioner's expansive evidentiary reach is to encourage full disclosure and cooperation among the parties during the pendency of a claim. *Dixon* v. *United Illuminating Co.*, 1996 CRB-4-94-3 (August 4, 1995), aff'd, 57 Conn. App. 51, 748 A.2d 300, cert. denied, 253 Conn. 908, 753 A.2d 940 (2000). "[A] commissioner must always protect the substantial rights of the parties [which] include the right of the employer . . . independently to examine the claimant, to notice his deposition, and to insist on hearing his personal testimony at a formal hearing. . . . Protecting such substantial rights is part and parcel of ensuring that each party in a compensation proceeding receives a fair hearing. Workers' compensation hearings must be conducted in a fundamentally fair manner so as not to violate the rules of due process. . . . A fundamental principle of due process is that each party has the right to receive notice of a hearing, and the opportunity to be heard at a meaningful time and in a meaningful manner. . . . Each party has the right to produce relevant evidence and to offer *rebuttal* evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *Bailey* v. *State*, 65 Conn. App. 592, 604, 783 A.2d 491 (2001). Thus, the specific directive concerning the procedure for obtaining mental or physical examinations by physicians contained in § 31-294f does not detract from a commissioner's authority to act pursuant to the more general provisions that may render such information discoverable.

Nonetheless, litigants are not without protection against unnecessarily onerous application of the discovery rules. As a general proposition, requiring the plaintiff to submit to extensive vocational assessment

procedures might well be unduly burdensome.[6] Here, however, to establish her unemployability, the plaintiff retained a nonphysician vocational rehabilitation expert who was prepared to testify that examination and testing established the plaintiff's present lack of capacity to perform in the workforce. The plaintiff thereby overtly made vocational rehabilitation assessment procedures material and necessary for the defendants for the purpose of rebuttal. The opportunity to present a competing assessment of the plaintiff's vocational abilities by a similarly qualified expert thus became imperative, given the goal underlying our discovery rules of ensuring that both the plaintiff and the defendant receive a fair trial. Under those circumstances, it cannot be said that the commissioner abused his discretion in finding that the need for the discovery outweighed the burden on the protesting party and, as a result, in compelling the discovery. Therefore, the board properly affirmed the decision of the commissioner.

B

The plaintiff also argues that the board improperly affirmed the commissioner's decision to exclude evidence from her own vocational rehabilitation specialist because of her refusal to comply with the order to submit to the defendants' examination. We disagree.

"Practice Book § [13-14][7] authorizes the trial court to grant a wide range of relief . . . for a party's failure

---

[6] The plaintiff argues that allowing such examinations will allow the defendants to send the plaintiff to unqualified individuals. We disagree. In order to allow an expert opinion into evidence, the commissioner must determine that the witness is qualified to give such an opinion and that there is a factual basis for the opinion. See *State* v. *Asherman*, 193 Conn. 695, 716, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

[7] Practice Book § 13-14 provides in relevant part: (a) If any party . . . has failed to submit to a physical or mental examination . . . the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

to [submit to a physical or mental examination]. The determination of whether to enter sanctions pursuant to [Practice Book § 13-14] and, if so, what sanction or sanctions to impose, is a matter within the sound discretion of the trial court. . . . In reviewing a claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *Amba Realty Corp.* v. *Kochiss*, 67 Conn. App. 149, 151–52, 786 A.2d 1137 (2001), cert. denied, 259 Conn. 912, 789 A.2d 993 (2002).

Additionally, the commissioner has broader discretion over evidence than does a trial court. General Statutes § 31-298 provides in relevant part that "the commissioner shall proceed, so far as possible, in accordance with the rules of equity. *He shall not be bound by the ordinary common law or statutory rules of evidence or procedure,* but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ." (Emphasis added.) In accordance with the broad sanction power of Practice Book § 13-14 and the mandate of

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal. . . ."

§ 31-298 that the commissioner protect the substantial rights of the parties while exercising his broad, equitable powers to take evidence and to carry out the provisions of chapter 568 of the General Statutes, we hold that the commissioner did not abuse his discretion in precluding the plaintiff from admitting evidence from her vocational rehabilitation expert when she disregarded the commissioner's order to submit to an examination by the defendants' expert. Thus, the board properly affirmed the decision of the commissioner.

II

The plaintiff next argues that the board was without jurisdiction to decide that she did not meet the requirements for total incapacity because the Social Security Administration has deemed her totally disabled from work for purposes of receiving social security disability benefits. We disagree and conclude that a finding by the Social Security Administration that the plaintiff is disabled for purposes of social security disability benefits does not preempt a workers' compensation commission from making its own independent determination concerning ability to work.

The claim in essence is a collateral estoppel, or issue preclusion, argument. "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373–74, 727 A.2d 1245 (1999).

"An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Emphasis in original; internal quotation marks omitted.) Id., 374. We have determined that that the issue of total incapacity was not actually litigated. The standards of the Social Security Administration in adjudicating total disability are

not the same standards used by our workers' compensation commission and, thus, a commissioner may decline to admit them into evidence. See *Krajewski* v. *Atlantic Aerospace Textron*, 15 Conn. Workers' Comp. Rev. Op. 44 (1995).[8]

Additionally, "[t]o assert successfully the doctrine of issue preclusion . . . a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 374. We note that the defendants in this case were not parties to the Social Security Administration action and were not in privity with any of the parties. See *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 813, 695 A.2d 1010 (1997) (collateral estoppel "requires an identity of issues between the prior and subsequent proceedings and operates only against the same parties or those in privity with them"). Additionally, any right to intervene in the social security action "does not, in the absence of its exercise, subject one possessing it to the risk of being bound by the result of the litigation . . . ." 47 Am. Jur. 2d 77, Judgments § 659 (1995); see also *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 115, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). Therefore, the prior findings should not be given preclusive effect, and we hold that the findings of total disability by the Social Security Administration are not binding on the workers' compensation commission.

---

[8] The plaintiff contends that the holding in *Krajewski* is not applicable to this case because it reviewed benefits under General Statutes § 31-308a and not General Statutes § 31-307. We disagree. After reviewing both § 223 (d) (2) (A) of the Social Security Act; 42 U.S.C. § 423, as amended; relevant federal regulations and § 31-307, we conclude that the standards for determining total disability also are not the same in those sections and that the holding in *Krajewski* is therefore applicable.

### III

The plaintiff also contends that the board improperly affirmed the commissioner's decision that she had not sustained her burden of proving that she met the requirements for total incapacity benefits. We disagree.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Dichello* v. *Holograth Corp.*, 49 Conn. App. 339, 352–53, 715 A.2d 765 (1998).

General Statutes § 31-307 (a) provides in relevant part that a plaintiff shall receive benefits "[i]f any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work . . . ." The plaintiff relies on *Osterlund* v. *State*, 135 Conn. 498, 66 A.2d 363 (1949), for the proposition that when a plaintiff is capable of working, but "his physical condition due to his injury is such that he cannot in the exercise of reasonable diligence find an employer who will employ him, he is just as much totally incapacitated as though he could not work at all." Id., 506–507; see also *Hidvegi* v. *Nidec Corp.*, 3607 CRB-05-97-05 (June 15, 1998) (although plaintiff had light duty capacity, she was temporarily totally disabled because she was not capable of any degree of work and not employable on basis of physical restrictions, age, limited education, lack of transferable skills). The plaintiff here argues that her claim is such a case. We disagree.

The plaintiff is a fifty-four year old woman who emigrated to the United States in 1991. Her only job in the United States has been working as a housekeeper for the Hartford Golf Club. Although she attended college

for four years and worked as a biology and chemistry teacher in Romania, her attempts to secure other work, including a teacher's aide position, have failed. Here, difficulty stems from that fact that while she is conversationally competent in English, she is not fluent and has been unable to pass a driver's license examination. In 2000, Krompinger opined that the plaintiff was capable of sedentary work only but that she may be a candidate for social security disability benefits because of her educational background and functional capacity. Jay Cudrin, a psychologist, examined the plaintiff for the purpose of a social security disability determination and opined that the plaintiff was afflicted with depressive disorder that may be secondary to her medical condition and that her IQ bordered on mental retardation but that "there is no doubt that this score grossly underestimated her actual intelligence level. Her performance on this test was severely hampered by her problems with English and the fact that she lived in another country until about ten years ago." He also stated that she had severe problems with consistent attention and concentration.

The plaintiff has not proven that she is eligible for § 31-307 benefits. Although she has proven that she has the ability to perform in a light duty capacity only, she has not shown that she has made adequate attempts to secure gainful employment or that she truly is unemployable.

The plaintiff also argues that she is suffering from a mental illness attributable to her accepted injury and, therefore, should be eligible for § 31-307 benefits. We disagree. Section 31-307 (c) (6) provides that "any injury resulting in incurable imbecility or mental illness" shall be considered as causing total incapacity. We agree with the defendants that although Cudrin stated that the plaintiff's depressive disorder "*may* be secondary to her medical condition," the plaintiff has not met her

burden of proving that the mental illness is causally related to her work-related injury or that any alleged mental illness is incurable.

We conclude that sufficient evidence existed to support the commissioner's determination that the plaintiff had not sustained her burden of proof in regard to her claim of total disability. Therefore, the board properly affirmed the findings of the commissioner on this claim.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.