JEAN O'CONNOR *v.* MED-CENTER HOME HEALTH CARE, INC., ET AL.
(AC 30200)

Gruendel, Lavine and Foti, Js.

---

Argued September 14, 2012—officially released February 5, 2013

*Robert K. Jahn,* for the appellant (named defendant et al.).

*Jean O'Connor,* pro se, the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendants, Med-Center Home Health Care, Inc. (Med-Center), and its workers' compensation insurer, AIG Claims Services, Inc., appeal

from the decision of the workers' compensation review board (board) upholding the decision of the workers' compensation commissioner for the fifth district (commissioner) finding, inter alia, that the self-represented plaintiff, Jean O'Connor, was totally disabled and awarding her temporary total disability benefits under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. Specifically, the defendants claim that the board erred in upholding the commissioner's finding and award of total disability, which was made without receiving direct medical evidence that the plaintiff was totally disabled. We affirm the decision of the board.

The following facts and procedural history are relevant to our disposition of the defendants' claim. While in the course of her employment as a duty nurse working for Med-Center, on December 27, 1996, the plaintiff fell on ice in a patient's driveway sustaining injuries to her hand, wrist, right knee and left shoulder.[1] The defendants accepted and covered these injuries. Several years after her initial injury, the plaintiff requested coverage for a partial knee replacement, which the defendants first approved, but then withdrew their approval. In the course of seeking coverage for the knee replacement surgery, the plaintiff submitted to evaluations by two orthopedic physicians, Steven E. Selden and Aris D. Yannopoulos, independent medical examiners secured by the defendants. Both Yannopoulos and Selden stated, in their respective reports prepared as part of their evaluations, that the plaintiff was capable of sedentary work. Following the evaluations by Selden and Yannopoulos, on January 16, 2006, the defendants filed a notice of intention to discontinue or reduce payments.

---

[1] The board, in a previous decision, affirmed the finding of the commissioner that a pulmonary embolism and an adrenal mass suffered by the plaintiff also were caused by her original work-related injury. *O'Connor* v. *Med-Center Home Health Care, Inc.*, No. 4954 CRB 5-05-6 (July 17, 2006).

On December 7, 2005, a four session hearing began before the commissioner regarding, inter alia, coverage of the plaintiff's partial knee replacement and the plaintiff's entitlement to temporary total disability benefits.[2] During the hearing, the commissioner received documentary medical evidence from both the plaintiff and the defendants. In support of her position, the plaintiff submitted a medical report dated March 30, 2006, from her treating physician, Michael J. Kaplan, stating that she was "functionally disabled." Kaplan explained in his report that the plaintiff could not endure "long periods of standing," "high-stress walking," "getting up repeatedly from a chair," "lifting, twisting, or high impact [activities]." Kaplan opined that the plaintiff was "capable of only the most sedentary of duties." The plaintiff also submitted a report dated April 26, 2006, dictated by Kaplan and signed by his physician's assistant, Keith Miner, stating that "there is little in terms of work capacities that she could tolerate other than [s]edentary capacities, but her ability to get to and from her house to place of employment is now severely limited." In addition to Kaplan's reports, the plaintiff offered a letter from Philip A. Mongeluzzo, Jr., a physician, dated February 25, 2006, that described the plaintiff's need for regular Coumadin[3] therapy and blood monitoring, without which she would be at risk for a "potentially fatal blood clot." The commissioner also accepted the reports produced by Selden and Yannopoulos.

---

[2] The hearing continued to May 24, June 1, and August 17, 2006.

[3] Coumadin, a brand name for the drug Warfarin, is "used to treat or prevent venous thrombosis (swelling and blood clot in a vein) and pulmonary embolism (a blood clot in the lung). Warfarin is in a class of medications called anticoagulants ('blood thinners'). It works by decreasing the clotting ability of the blood." Medline Plus: Warfarin, last modified September 1, 2010, p. 2, 6, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682277.html (last visited January 14, 2013) (copy contained in the file of this case in the Appellate Court clerk's office).

The commissioner, in addition to taking documentary medical evidence, also heard testimony from the plaintiff. During the defendants' cross-examination of the plaintiff, she testified regarding her ability to perform a "desk job." She testified that she would be unable to perform such a job both because her condition prevented her from getting to a place of work and because she is unable to sit for any extended period of time due to the resulting numbness and muscle spasms in her leg.[4] The plaintiff, in her direct testimony, described accommodations her physical condition has required that she make in her everyday life. She testified that she can no longer clean her home, do her laundry or drive. The plaintiff stated that, as a result, she pays to have these services performed on her behalf.

The commissioner issued his finding and award on September 20, 2006, in which he found that Kaplan and Mongeluzzo "are of the opinion [that] the [plaintiff] is totally disabled." He did not credit the opinions of Selden and Yannopoulos. The commissioner found that the plaintiff was credible and that she had sustained her burden of proof in showing that she is totally disabled. Based on these findings, the commissioner ordered, inter alia, that the defendants pay the plaintiff total disability benefits.

Following the issuance of the commissioner's finding and award, on October 3, 2006, the defendants filed a motion to correct, inter alia, the findings that Kaplan and Mongeluzzo were of the opinion that the plaintiff is totally disabled and that she had met her burden

---

[4] The defendants ask us to consider the fact that the plaintiff has represented herself in this action as evidence that she is not totally disabled. Because the commissioner made no such finding, we may not consider this fact, nor do we need to address whether such a finding would be proper. *Castro* v. *Viera*, 207 Conn. 420, 435, 540 A.2d 1216 (1988) ("[i]t is the power and the duty of the commissioner . . . to determine the facts").

of proof. The defendants argued that these findings warranted correction because the medical reports indicated that the plaintiff was capable of sedentary work. The commissioner denied the motion to correct.

The defendants appealed the September 20, 2006 finding and award to the board, claiming that the commissioner's findings of fact regarding the plaintiff's total disability were not supported by the record and that the conclusions of the commissioner were legally inconsistent with the subordinate facts found. After a hearing on the matter, the board issued its decision on August 28, 2007. The board stated that whether the plaintiff is totally disabled, as opposed to partially disabled, is a matter to be determined by the commissioner. In affirming the commissioner's finding and award, the board reasoned that the plaintiff's testimony about the "physical limitations she suffered and the accommodations she has made in her personal life" render it reasonable "to infer from the [plaintiff's] medical history and the reports of [the plaintiff's] treating physician . . . that the [plaintiff] is totally disabled from employment." Accordingly, the board concluded that the commissioner did not abuse his discretion in finding that the plaintiff was totally disabled. Although the board affirmed the decision of the commissioner, it remanded the case to the commissioner to find an exact award amount, which he had not done in his finding and award of September 20, 2006. From that decision of the board, the defendants appeal.[5]

"As a preliminary matter, we note that when the decision of a commissioner is appealed to the review

[5] This appeal is presented on remand from the Supreme Court. *O'Connor* v. *Med-Center Home Health Care, Inc.*, 303 Conn. 238, 32 A.3d 956 (2011). This court dismissed on jurisdictional grounds the defendants' original appeal from the decision of the board. Id., 240. The Supreme Court concluded that this court has jurisdiction to hear the appeal, reversed the judgment dismissing the defendants' appeal and remanded the case to this court for further proceedings. Id., 245–46.

[board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . It is the power and the duty of the commissioner, as the trier of fact, to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." (Citations omitted; internal quotation marks omitted.) *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 723, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003). "Neither the review board nor this court has the power to retry facts." (Internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 57 Conn. App. 406, 411, 750 A.2d 1098 (2000).

"The review [board] may not disturb the conclusions that the commissioner draws from the facts found unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . In other words, [t]hese conclusions must stand unless they could not reasonably or logically be reached on the subordinate facts. . . . Our scope of review of the actions of the review [board] is similarly limited. . . . The decision of the review [board] must be correct in law, and must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Citations omitted; internal quotation marks omitted.) *D'Amico* v. *Dept. of Correction*, supra, 73 Conn. App. 723–24. Furthermore, "[i]t is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 572, 986 A.2d 1023 (2010).

We address first the underlying factual finding made by the commissioner that Kaplan and Mongeluzzo were

of the opinion that the plaintiff was totally disabled.[6] As there is no evidence in the record to support it, we are not bound by that finding.

"[W]e are bound by the subordinate facts found by the commissioner unless those findings are clearly erroneous. . . . A factual finding is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases where there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *Brymer* v. *Clinton*, 302 Conn. 755, 765, 31 A.3d 353 (2011).

The two reports from Kaplan describe the varied physical limitations suffered by the plaintiff. They do not, however, indicate that Kaplan was of the opinion that the plaintiff was totally disabled. While Kaplan did opine that the plaintiff was "functionally disabled," he unequivocally stated that she was capable of sedentary duties. The report prepared by Mongeluzzo did not discuss in any respect the plaintiff's degree of disability, but addressed only the plaintiff's need for treatment with anticoagulants.

Given that there is no evidence in the record that either Kaplan or Mongeluzzo were of the medical opinion that the plaintiff was totally disabled, we conclude that the commissioner's finding that they were of such an opinion is clearly erroneous. Accordingly, we do not consider that finding as we determine whether the

---

[6] The defendants, without citing any legal authority, also assert that the commissioner improperly referenced the plaintiff's "medical history" in support of his finding of the plaintiff's total disability. As this claim was inadequately briefed, we do not address it. See *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008) ("[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

board erred in upholding the commissioner's finding and award.

We turn next to the defendants' claim that the board improperly upheld the commissioner's finding that the plaintiff was totally disabled from work. The defendants argue that without direct medical evidence indicating that the plaintiff was totally disabled, the commissioner could not properly find that the plaintiff was totally disabled. We disagree.

General Statutes § 31-307 (a) mandates that employers provide compensation to injured employees otherwise covered by the act, in the case that their work-related injuries result in total incapacity from work.[7] "[A] plaintiff is entitled to total disability benefits under § 31-307 (a) only if he can prove that he has a total incapacity to work. . . . The plaintiff [bears] the burden of proving an incapacity to work. . . . Our Supreme Court has defined total incapacity to work as the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation he might reasonably follow." (Internal quotation marks omitted.) *Diaz* v. *Pineda*, 117 Conn. App. 619, 623–24, 980 A.2d 347 (2009).

The defendants contend that in order to meet her burden of proving her total incapacity to work, the plaintiff was required to produce direct medical evidence that she was totally disabled. To support their position, the defendants rely largely on case law that stands for the proposition that, when the causal relationship between a claimant's work-related accident

[7] General Statutes § 31-307 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury . . . and the compensation shall not continue longer than the period of total incapacity."

and his or her injury is not a matter of common knowledge, the commissioner must base conclusions with respect to causation on competent medical evidence. See *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 151–52, 291 A.2d 743 (1972). Relying on a single case from this court, *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 774 A.2d 992 (2001), the defendants argue that competent medical evidence similarly is required to prove total disability, or total incapacity to work.

In *Dengler*, the plaintiff, a nurse's assistant, injured her back while working in a patient's home. Id., 443. That injury was covered by her employer. Id. In the course of her treatment for the work-related back injury, the plaintiff was diagnosed with degenerative disc disease and spondylosis, among other back ailments. Id. Approximately six months after she injured her back, the plaintiff "experienced some instability in her lumbar spine, which caused her to drop to her knees in her kitchen." Id. On the same day as the episode in her kitchen, "the instability in her lumbar spine caused her to fall while descending a stairway" in her home. Id. The plaintiff sustained a fractured tibia and fibula in her right leg as a result of that fall. Id. The commissioner heard testimony from the plaintiff's brother corroborating the plaintiff's account, but also received a medical record that indicated that the plaintiff, while chasing dogs in her backyard, had fallen into a hole. Id., 446. Without receiving medical evidence opining on causation, the commissioner found that the injuries the plaintiff sustained from the fall down the stairs were causally related to her original back injury and that she was totally disabled from the combined results of those injuries. Id., 443–44. The board reversed the commissioner's finding because the plaintiff had not presented medical evidence to substantiate the causal relationship between her original and her second injury. Id., 444–45.

On appeal, this court found that the board properly required such evidence when causation was in dispute. Id., 449–50.

The defendants in the present case, arguing that the plaintiff must present direct medical evidence to sustain a finding of total disability, rely primarily on one line from *Dengler*. In *Dengler*, this court, after concluding that medical evidence is required when the cause of an injury is in dispute, turned to the question of whether the board improperly reversed the finding of the commissioner that the plaintiff's total disability, which resulted from the combined effects of her first and second injury, was caused by her original work-related injury. In setting forth the standard of review for this issue, the court in *Dengler* stated, "[a]s with our earlier discussion [regarding the causal nexus between accident and injury], we look to whether competent medical evidence supports the commissioner's finding and award." Id., 454. The defendants cite this statement for the proposition that direct medical evidence is required for the commissioner to make a finding of total disability. That, however, is a misreading of the case. At issue in *Dengler* was not merely whether the plaintiff was totally disabled, but whether the subsequent injury to her leg, for which causation had not been established, was a cause of her total disability. The analysis in *Dengler* involved a combined question of causation and whether the plaintiff was totally disabled, and the court held only that direct medical evidence is required where the claim involves any dispute over causation. Accordingly, we conclude that *Dengler* is inapposite to the present case.

This court, however, has recently addressed the issue now presented by the defendants in *Bode* v. *Connecticut Mason Contractors, The Learning Corridor*, 130 Conn. App. 672, 25 A.3d 687, cert. denied, 302 Conn. 942, 29 A.3d 467 (2011). In *Bode*, the plaintiff, an Albanian

immigrant with limited English language proficiency, fell approximately thirty feet from scaffolding on which he was laboring. Id., 674. He suffered multiple spine and shoulder fractures, as well as a hernia. Id. Due to these injuries, Bode requested temporary total disability payments and a hearing was held to determine his eligibility. Id., 675.

During the hearing, Bode produced medical records that contained the opinions of several physicians who concluded that he was capable of "light duty" work, but presented no medical evidence that concluded that he was totally disabled. Id., 676. He did, however, submit four vocational evaluations. Id., 677. Two of those evaluations, conducted in the two years following his injury, indicated that Bode was capable of light duty work. Id. The two subsequent evaluations, conducted two and one-half and six years after his injury, when his physical condition had further deteriorated, indicated that he was not employable. Id. The commissioner found that Bode had not met his burden of demonstrating that he was totally disabled from work because "he did not introduce one medical report in which a physician opined that [he] was totally disabled." Id., 678. The board affirmed the commissioner's finding and award. Id.

In *Bode,* this court explained that a medical determination of total disability is merely one way a claimant can establish total incapacity to work, and one of many types of evidence the commissioner may consider in making this finding. "[I]n order to receive total incapacity benefits . . . a plaintiff bears the burden to demonstrate a diminished earning capacity by showing either that she has made adequate attempts to secure gainful employment *or* that she is truly unemployable. . . . Whether the plaintiff makes this showing of unemployability by demonstrating that she actively sought

employment but could not secure any, or by demonstrating through nonphysician vocational rehabilitation expert or medical testimony that she is unemployable . . . as long as there is sufficient evidence before the commissioner that the plaintiff is unemployable, the plaintiff has met her burden. . . .

"Whether a claimant is realistically employable requires an analysis of the effects of the compensable injury upon the claimant, in combination with his preexisting talents, deficiencies, education and intelligence levels, vocational background, age, and any other factors which might prove relevant. . . . A commissioner always must examine the impact of the compensable injury upon the particular claimant before him. . . . [T]he commissioner must evaluate not only the physical incapacity of the plaintiff, but the effect the physical injury has on the plaintiff's employability." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 680–81. This court held that because the commissioner based his decision only on Bode's physical capacity, ignoring the other significant evidence that he presented, his determination that the plaintiff was not totally disabled "resulted from an incorrect application of the law to the subordinate facts and from inferences unreasonably drawn from those facts." Id., 687.

*Bode* highlighted that the evaluation of whether a claimant is totally disabled is a holistic determination of work capacity, rather than a medical determination. Moreover, *Bode* categorically rejected the notion that claimants must present a particular kind of evidence to meet their burden of proving their total disability. The board similarly has concluded that wide latitude is afforded to commissioners with respect to the evidence they may consider in evaluating whether a claimant is totally disabled. While neither dispositive of the issue nor binding on this court, the board's interpretation of the act is instructive and we give it great weight. See

*Schiano* v. *Bliss Exterminating Co.*, supra, 57 Conn. App. 411. The board has opined that, under the act, no specific type of evidence is required for a commissioner to make a finding of total disability. "[O]ur total and partial disability statutes give the factfinder room to extrapolate unemployability from various sources. These include a claimant's inability to find work after making a reasonable attempt to do so, a vocational expert's report, or considerations such as educational background, language fluency, and medical restrictions implicating physical posture, lifting, stamina, sleep disorders, and pain tolerance." *Gombas* v. *Custom Air Systems, Inc.*, No. 4996 CRB 4-05-9 (September 20, 2006). Accordingly, we conclude that the commissioner did not apply an improper legal standard to the underlying facts of this case when, by evaluating all of the evidence before him, he found that the plaintiff had met her evidentiary burden without requiring direct medical evidence declaring her to be totally disabled.

Finally, we turn to the question of whether, in applying the proper legal standard, the commissioner reasonably could have found that the plaintiff was totally disabled. We conclude that he reasonably could have found as he did, and, therefore, the board did not err in upholding the commissioner's finding and award.

The commissioner had before him competent medical evidence that detailed the plaintiff's significant physical limitations with respect to work capacity, along with the plaintiff's credible testimony regarding her inability to do even desk work because of the pain associated with sitting for extended periods of time and her restricted mobility. While the commissioner did not receive medical evidence categorically stating that the plaintiff was totally incapacitated from work, nor did he receive expert vocational evidence, the commissioner had sufficient evidence in the record to support his finding that the plaintiff had met her burden to

show that she was temporarily totally disabled.[8] The commissioner reasonably and logically could have concluded that the plaintiff's inability to sit for long periods, stand for long periods, repeatedly get up from a chair, twist, lift or drive, combined with the pain associated with her condition, rendered her temporarily totally incapacitated from work. We, therefore, determine that the board's decision was correct in law and supported by the facts in evidence. Thus, we conclude that it properly affirmed the commissioner's finding and award of temporary total disability benefits.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[8] The defendants suggest in their brief to this court that if there is no direct medical evidence declaring the plaintiff's total disability, she must then launch a distinct claim of "vocational" total disability in order to be eligible for total disability benefits. There is no Connecticut authority that supports such a distinction.