******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# BARBARA MIKUCKA *v.* ST. LUCIAN'S RESIDENCE, INC., ET AL.
## (AC 39673)

Alvord, Sheldon and Keller, Js.

*Syllabus*

The plaintiff appealed to this court from the decision of the Compensation Review Board affirming the decision of the Workers' Compensation Commissioner determining that she was no longer entitled to temporary total disability benefits. The plaintiff had sustained certain compensable injuries in the course and scope of her employment with the defendant company, S Co., which accepted compensability and paid her temporary total disability benefits. Thereafter, the defendants filed a form 36, seeking to discontinue those benefits on the ground that the plaintiff had achieved maximum medical improvement. At an informal hearing, the commissioner approved the form 36, but the plaintiff objected and requested a formal hearing to address the form 36 and the discontinuation of benefits. The commissioner subsequently held a formal hearing on the form 36 to determine whether the plaintiff had achieved maximum medical improvement. At the hearing, the plaintiff did not provide evidence or argue that she had not reached maximum medical improvement but, instead, raised a vocational total disability claim pursuant to *Osterlund* v. *State* (135 Conn. 498) and sought to present evidence in support of that claim. The commissioner did not permit the plaintiff to present such evidence but repeatedly invited her to return in three weeks for a hearing to present evidence that she was vocationally totally disabled. Following the hearing, the commissioner granted the form 36, determining that the plaintiff had reached maximum medical improvement and that she had a work capacity. The plaintiff thereafter appealed to the board, which affirmed the commissioner's decision. On the plaintiff's appeal to this court, *held*:

1. The plaintiff could not prevail on her claim that the commissioner violated her right to due process by not permitting her to present evidence in support of her *Osterlund* claim at the formal hearing: the commissioner's decision did not prejudicially affect the plaintiff's substantive rights, as she inexplicably declined the commissioner's invitation to return in three weeks for a hearing to present evidence that she was vocationally totally disabled, and, thus, she could not demonstrate how she was harmed by the commissioner's decision when she could have returned three weeks later to pursue her *Osterlund* claim; moreover, the commissioner's decision to bifurcate the plaintiff's claim protected the defendants' due process rights, as the plaintiff did not provided the defendants with notice of her claim, and if the commissioner had permitted the plaintiff to present evidence in support thereof, the defendants would have been subjected to trial by ambuscade, in violation of their cognizable due process right to notice.

2. The plaintiff's claim that the commissioner erred in determining that she was not totally disabled pursuant to *Osterlund* was not ripe for review; the plaintiff opted not to pursue this claim despite the commissioner's invitation to do so, and, as a result, it was not litigated, and for this court to review it on appeal would violate the principles of ripeness by prematurely adjudicating a hypothetical claim.

Argued March 20—officially released July 3, 2018

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Sixth District determining that the plaintiff was no longer entitled to certain disability benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the plaintiff appealed to this court. *Appeal dismissed in part; affirmed.*

*Jennifer B. Levine*, with whom was *Harvey L. Levine*, for the appellant (plaintiff).

*Neil J. Ambrose*, for the appellees (defendants).

*Opinion*

KELLER, J. The plaintiff, Barbara Mikucka, appeals from the decision of the Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Sixth District (commissioner) that she was no longer entitled to temporary total disability benefits after reaching maximum medical improvement. The plaintiff claims that (1) the commissioner, by not allowing her to present evidence to prove that she did not have a work capacity, violated her right to due process, and (2) the commissioner erred in determining that she was not totally disabled. We affirm the decision of the board and dismiss the appeal as to the second claim.

The following facts and procedural history are relevant to this appeal. The plaintiff worked for the defendant employer, St. Lucian's Residence, Inc.,[1] as a cook. The plaintiff sustained compensable bilateral shoulder injuries in the course and scope of her employment on May 10, 2011. The defendants accepted compensability for the plaintiff's injuries and paid her temporary total incapacity benefits.

On March 19, 2014, the defendants filed a form 36,[2] seeking to discontinue the plaintiff's temporary total disability benefits on the basis that she had "achieved maximum medical improvement" as of February 27, 2014. The defendants attached the opinion of the plaintiff's treating physician, Dr. Robert J. Carangelo, to the form 36. Carangelo opined that the plaintiff had reached maximum medical improvement and assigned a 17.5 percent permanent partial disability to her right shoulder and a 12.5 percent permanent partial disability to her left shoulder. At an informal hearing, the commissioner approved the form 36. The plaintiff objected and requested a formal hearing. On February 10, 2015, the plaintiff sent all parties notice of a formal hearing to address the "Form 36/Discontinuation of Benefits."

On March 11, 2015, the commissioner held a formal hearing on the form 36 to determine whether the plaintiff had achieved maximum medical improvement. At the hearing, the plaintiff neither provided evidence nor argued that she had not reached maximum medical improvement. Instead, the plaintiff testified about her background and her injuries. The following exchange between the plaintiff and her occurred:

"[The Plaintiff's Counsel]: What is your native tongue?

"[The Plaintiff]: Polish. . . .

"[The Plaintiff's Counsel]: How well do you speak English? . . .

"[The Plaintiff]: A little bit.

"[The Plaintiff's Counsel]: How old are you?

"[The Plaintiff]: Fifty-four.

"[The Plaintiff's Counsel]: "What country did you grow up in?

"[The Plaintiff]: In Poland.

"[The Plaintiff's Counsel]: What is your level of education?"

The defendants' counsel then objected, but the commissioner overruled the objection, stating: "Hang on. [These are] preliminary questions I think any lawyer would ask of any witness. I think you're afraid [the plaintiff's counsel] is leading into an *Osterlund* [v. *State*, 135 Conn. 498, 66 A.2d 363 (1949)] claim[3] . . . . I understand that. But right now, I would ask any witness what [is] your education level, where did you grow up. These are preliminary questions. I'm certainly going to let [the plaintiff's counsel] ask [them]. Go ahead . . . . Would you repeat the question, please?"

The plaintiff continued to testify:

"[The Plaintiff's Counsel]: What is your level of education?

"[The Plaintiff]: Elementary school and three years of vocational high school.

"[The Plaintiff's Counsel]: Are you married?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: Do you have any children?

"[The Plaintiff]: No.

"[The Plaintiff's Counsel]: How long have you been married?

"[The Plaintiff]: Twenty-eight years.

"[The Plaintiff's Counsel]: What country were you married in?

"[The Plaintiff]: In Poland.

"[The Plaintiff's Counsel]: And after your vocational school, what kind of work did you do?

"[The Plaintiff]: I worked on the family farm.

"[The Plaintiff's Counsel]: And when did you come to the United States?

"[The Plaintiff]: 1994.

"[The Plaintiff's Counsel]: Did you come with your husband?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And where did you reside once you came to the United States?

"[The Plaintiff]: New Britain.

"[The Plaintiff's Counsel]: Did you start any sort of

job after moving to the United States.

"[The Plaintiff]: Yes, I clean[ed] offices [for] four hours a day.

"[The Plaintiff's Counsel]: How long did you do that for?

"[The Plaintiff]: For about two, three years.

"[The Plaintiff's Counsel]: And what did you do after that?

"[The Plaintiff]: Then I [went] to St. Lucian's [Residence, Inc.] to work.

"[The Plaintiff's Counsel]: And how long did you work there for?

"[The Plaintiff]: About fifteen, sixteen years.

"[The Plaintiff's Counsel]: And were you able to communicate with your coworkers at St. Lucian's?

"[The Plaintiff]: Yes, because my . . . immediate boss . . . and all the workers were Polish.

"[The Plaintiff's Counsel]: Can you describe your job at St. Lucian's?

"[The Plaintiff]: I cook there, I serve to residents, clean up. Everything.

"[The Plaintiff's Counsel]: And when did you stop working there.

"[The Plaintiff]: I stopped working September, 2011.

"[The Plaintiff's Counsel]: And why did you stop working there?

"[The Plaintiff]: I had an accident. . . .

"[The Plaintiff's Counsel]: Can you describe how that injury occurred? . . .

"[The Plaintiff]: I think I was . . . [baking] some cakes in the big mixer which was on the level of the chair, maybe a little bit higher. And I put all the ingredients in the mixer. But [when] I tried to turn the mixer on with the special device . . . the mixer switched [positions] and I [fell] and I started screaming to for people to help. . . .

"[The Plaintiff's Counsel]: And can you explain which body parts you injured as a result of this?

"[The Plaintiff]: Both shoulders.

"[The Plaintiff's Counsel]: And did you ever have any surgeries as a result of this injury?

"[The Plaintiff]: Yes, three operations.

"[The Plaintiff's Counsel]: And can you tell me which arms, how many times per arm you had a surgery?

"[The Plaintiff]: On the right shoulder, I had it twice operated and once on the left.

"[The Plaintiff's Counsel]: And did Dr. Carangelo perform surgery on you?

"[The Plaintiff]: Yes. Two operations [were] done by Dr. Kelley and one operation was done by Dr. Carangelo.

"[The Plaintiff's Counsel]: Which arm was done by Dr. Carangelo?

"[The Plaintiff]: Second time, my right.

"[The Plaintiff's Counsel]: And do you currently treat with Dr. Carangelo?

"[The Plaintiff]: Yes, I visit him.

"[The Plaintiff's Counsel]: For both arms?

"[The Plaintiff]: Yes. . . .

"[The Plaintiff's Counsel]: So, after all the surgeries have been completed, how do you presently feel?

"[The Plaintiff]: I didn't feel good. Every time I move my arms a little bit more than I should, the pain starts to increase, and it feels like a knife getting in my arms.

"[The Plaintiff's Counsel]: Has this feeling been present since after your surgeries? . . .

"[The Plaintiff]: [I]t hurts me all the time. . . .

"[The Plaintiff's Counsel]: How much activity with your arms does it take for your pain to worsen?

"[The Plaintiff]: The moment I start moving my arms, they start getting pain."

At this point, the commissioner interjected and the following colloquy occurred:

"[The Commissioner]: Is there a medical record that says [the plaintiff is] not at maximum medical improvement?

"[The Plaintiff's Counsel]: No, because I'm still arguing that a form 36 is a discontinuance of her [temporary total] benefits.

"[The Commissioner]: So, you don't have a medical record saying she's not at maximum medical improvement?

"[The Plaintiff's Counsel]: No. . . .

"[The Commissioner]: Well, I told you we're going to proceed with the hearing on the form 36, whether or not it was providently or improvidently granted. I understand you're claiming that she has an *Osterlund* claim. That's not on the notice. . . . I cannot, based on the notice that I have, reach a determination whether she's vocationally disabled or not. And quite frankly, I don't think [the defendants' counsel] is prepared to litigate that any way, but it's not on the notice. We're here to determine whether she was . . . at maximum medical improvement on the date the form 36 was granted. I

appreciate what you're telling me. . . . Look, you may have a very good *Osterlund* claim, but this right now is not the place to litigate it. I'm not suggesting you may or may not do well on that, but what we're here to discuss is the form 36. I can certainly put it down for an *Osterlund* claim if you want and [the defendants' counsel] can get [a] vocational expert . . . . I think my hands are [somewhat] tied here in that the notice says that—

"[The Plaintiff's Counsel]: Well, so are mine.

"[The Commissioner]: But the difference is this, I don't see the file until today for a trial. I don't know in advance what it's about. Unfortunately, I didn't handle the prior hearings, so I'm here on what we're here for. You know, [the form 36] was granted a year ago. You could certainly have pursued a vocational claim a year ago. Maybe you didn't have the evidence at that point or not, I don't know, or you could have asked to have that issue advanced. But I think where you and I may be differing is I think you think that you can just claim that she's vocationally disabled as a defense to [the] form 36.

"[The Plaintiff's Counsel]: "That's what I'm saying. . . .

"[The Commissioner]: [T]he question I have is whether or not she's . . . at maximum medical improvement. If you want to pursue [the vocational disability] claim, you're more than welcome to. You may have a very good claim. I'm not suggesting you don't. What I'm suggesting is, we're not going to do that here because the issue is a form 36, and it's a no decision. . . . Just like . . . if we were here for something else, I wouldn't let [the defendants] add something on in a surprise to you. . . . [I]f you want to pursue a vocational disability [claim], I would put this file down for two or three weeks, and you could come and you bring the evidence. . . .

"[The Plaintiff's Counsel]: I will have the *Osterlund* claim that you think is appropriate."

After reiterating that the plaintiff was welcome to introduce evidence to suggest that she was not at maximum medical improvement, the commissioner stated: "What I'm going to do is put this down for a hearing in three weeks . . . . The claim you're going to make at that time is [that the plaintiff is] vocationally disabled."

In his November 10, 2015 decision, the commissioner determined that the plaintiff had reached maximum medical improvement and that she had a work capacity. Accordingly, he granted the form 36, effective as of the date on which the defendants filed it, March 19, 2014.

On November 23, 2015, the plaintiff, without pursuing the vocational total disability claim pursuant to *Osterlund* as the commissioner had recommended, appealed

to the board, arguing that "the trial commissioner could not rule on a form 36 establishing her attainment of maximum medical improvement without considering whether she was still temporarily totally disabled."[4]

In its September 14, 2016 decision affirming the commissioner's decision, the board found in relevant part the following: "Essentially, on March 11, 2015, the [defendants] were prepared to proceed with their arguments in favor of granting the form 36 and the [plaintiff] had not offered notice to the trial commissioner nor to the [defendants] that she was pursuing a claim that she was entitled to total disability based on an *Osterlund* theory; nor is it clear she had evidence necessary as of that date to establish a prima facie case on such a claim. Under these circumstances the trial commissioner essentially was obligated to follow the precedent in *Martinez-McCord* v. *State*, No. 5055, CRB-7-06-2 (February 1, 2007) to rule on the issue which was capable of being addressed at that juncture and bifurcate the issues and address the balance of the issues at a later proceeding. 'Bifurcation of the trial proceedings lies solely with the discretion of the trial court . . . and appellate review is limited to a determination of whether this discretion has been abused.' *Swenson* v. *Sawoska*, [18 Conn. App. 597, 601, 559 A.2d 1153 (1989), aff'd, 215 Conn. 148, 575 A.2d 206 (1990)]. [The commissioner] did not abuse his discretion in this matter.

"Moreover, the [plaintiff's] argument herein appears to contravene our unequivocal precedent in *Ghazal* v. *Cumberland Farms*, No. 5397, CRB-8-08-11 (November 17, 2009). If a new issue or new evidence is considered at a formal hearing, the trial commissioner must offer the opposing party the ability to prepare on the issue and challenge the evidence. [The commissioner] offered the parties this opportunity. The [plaintiff] does not persuade us that this decision was erroneous in any respect. Moreover, we believe that had the commissioner ruled on the [plaintiff's] claim for [General Statutes] § 31-307[5] . . . benefits solely on the record available as of March 11, 2015, the claim may well have failed. The decision of [the commissioner] to bifurcate the proceedings comported with the due process standards delineated in *Balkus* v. *Terry Steam Turbine Co.*, [167 Conn. 170, 177, 355 A.2d 227 (1973)], and protected the interests of both parties.

"We have long pointed out that the parameters of [General Statutes] § 31-298[6] . . . extend great deference to trial commissioners as to how to manage proceedings before them. *See Reid* v. *Speer*, No. 5818, CRB-2-13-1 (January 28, 2014) and *Valiante* v. *Burns Construction Co.*, No. 5393, CRB-4-08-11 (October 15, 2009). We find no error in how [the commissioner] handled an issue which was raised at the [eleventh] hour by [the plaintiff's] counsel, and which could not have been addressed at that point in time." (Footnotes added and

omitted.) This appeal followed.

Before addressing the plaintiff's claims, we set forth the standard of review on appeals from the board. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board." (Internal quotation marks omitted.) *Leonetti* v. *MacDermid, Inc.*, 310 Conn. 195, 205–206, 76 A.3d 168 (2013).

The following principles regarding a claimant's eligibility for temporary total disability payments on the basis of a vocational total disability are relevant to this appeal. "Under the Workers' Compensation Act, General Statutes § 31-275 et seq., [a] worker is entitled to total disability payments pursuant to . . . § 31-307 only when his injury results in a total incapacity to work, which [our Supreme Court has] defined as the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation which he might reasonably follow. . . . Our Supreme Court stated in *Osterlund* . . . that [a] finding that an employee is able to work at some gainful occupation within his reasonable capacities is not in all cases conclusive that he is not totally incapacitated. If, though he can do such work, his physical condition due to his injury is such that he cannot in the exercise of reasonable diligence find an employer who will employ him, he is just as much totally incapacitated as though he could not work at all. . . . If, because of the employee's injury, his labor becomes unmarketable, in spite of his diligent efforts to find work, his earning power is gone and he is totally incapacitated. . . .

"This court previously has stated that [i]n order to receive total incapacity benefits under § 31-307, a plaintiff bears the burden to demonstrate a diminished earning capacity by showing either that she has made adequate attempts to secure gainful employment *or* that she truly is unemployable. . . . Whether the plaintiff makes this showing of unemployability by demonstrating that she actively sought employment but could not secure any, or by demonstrating through a nonphysician vocational rehabilitation expert or medical testimony that she is unemployable . . . as long as there is sufficient evidence before the commissioner that the plaintiff is unemployable, the plaintiff has met her burden. . . .

"Whether a claimant is realistically employable requires an analysis of the effects of the compensable injury upon the claimant, in combination with his preexisting talents, deficiencies, education and intelligence levels, vocational background, age, and any other fac-

tors which might prove relevant. This is of course the analysis that commissioners regularly undertake in total disability claims . . . . A commissioner always must examine the impact of the compensable injury upon the particular claimant before him. . . .

"The import of *Osterlund* . . . is that the commissioner must evaluate not only the physical incapacity of the plaintiff, but the effect that the physical injury has on the plaintiff's employability." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bode* v. *Connecticut Mason Contractors, The Learning Corridor*, 130 Conn. App. 672, 679–81, 25 A.3d 687, cert. denied, 302 Conn. 942, 29 A.3d 467 (2011).

I

The plaintiff's first claim is that the commissioner, by not allowing her to present evidence to prove that she did not have a work capacity, violated her right to due process. We disagree.

"Whether a party was deprived of his due process rights is a question of law to which appellate courts grant plenary review." *McFarline* v. *Mickens*, 177 Conn. App. 83, 100, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

"Inquiry into whether particular procedures are constitutionally mandated in a given instance requires adherence to the principle that due process is flexible and calls for such procedural protections as the particular situation demands. . . . There is no per se rule that an evidentiary hearing is required whenever a liberty [or property] interest may be affected. Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." (Internal quotation marks omitted.) *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24–25, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004).

"The fundamental requisite of due process of law is the opportunity to be heard. . . . The hearing must be at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Internal quotation marks omitted.) *Pagan* v. *Carey Wiping Materials Corp.*, 144 Conn. App. 413, 418–19, 73 A.3d 784, cert. denied, 310 Conn. 925, 77 A.3d 142 (2013).

"Matters of procedure in compensation cases which do not affect prejudicially the rights of parties, will not avail upon appeal. Unless such rights be thus affected, the form of procedure before the compensation commissioner is exclusively for his determination. It is only when the rights of parties are prejudicially affected that we will consider on appeal matters of procedure before the commissioner." (Internal quotation marks omitted.) *Gonirenki* v. *American Steel & Wire Co.*, 106 Conn. 1,

8–9, 137 A. 26 (1927).

The plaintiff argues that the commissioner, by not allowing her to present evidence about her vocational total disability claim pursuant to *Osterlund* at the March 11, 2014 hearing, violated her right to due process. The plaintiff's due process claim is meritless because the commissioner's decision to not allow her to present evidence in support of her *Osterlund* claim on that particular day did not prejudicially affect her substantive rights. The commissioner repeatedly invited the plaintiff to return for a hearing in three weeks to present evidence that she was vocationally totally disabled. The plaintiff inexplicably declined the commissioner's invitation to do so. Thus, she cannot demonstrate how she was harmed by the commissioner's decision to not let her present evidence regarding a potential vocational disability at the March 11, 2014 hearing when she could have returned three weeks later to pursue this claim.[7]

The plaintiff, primarily relying on *O'Connor* v. *Med-Center Home Health Care, Inc.*, 140 Conn. App. 542, 59 A.3d 385, cert. denied, 308 Conn. 942, 66 A.3d 884 (2013), argues that she could have rebutted the form 36 notice seeking to terminate her temporary total disability benefits on the basis of her reaching maximum medical improvement by either showing that she was medically or vocationally totally incapacitated. This is the correct interpretation of the law. See id., 554, 556 n.8. The plaintiff, however, fails to acknowledge a key distinction between the present case and *O'Connor*. In *O'Connor*, the plaintiff litigated her vocation based disability claim over a four session hearing. Id., 545. In the present case, the commissioner offered the plaintiff the opportunity to litigate this issue. As previously stated, the plaintiff elected not to pursue this claim. The plaintiff cannot, now on appeal, rely on *O'Connor* to argue that the commissioner should have undergone a holistic evaluation of her work capacity when, unlike the plaintiff in *O'Connor*, she never presented this claim despite the commissioner's invitation to do so.

It is also important to note that the commissioner's decision to bifurcate the plaintiff's claim protected the defendants' due process rights. At workers' compensation hearings, "no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue." *Osterlund* v. *State*, 129 Conn. 591, 596, 30 A.2d 393 (1943).

"Administrative hearings, including those held before workers' compensation commissioners, are informal and governed without necessarily adhering to the rules of evidence or procedure. . . . Nonetheless, administrative hearings must be conducted in a fundamentally fair manner so as not to violate the rules of due process. . . . A fundamental principle of due process is that each party has the right to receive notice of a hearing, and the opportunity to be heard at a meaningful time

and in a meaningful manner. . . . Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence. . . . Further, procedural due process mandates that the commissioner cannot consider additional evidence submitted by a party without granting the opponents . . . the opportunity to examine that evidence and offer evidence in explanation or rebuttal." (Citations omitted; internal quotation marks omitted.) *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 740, 774 A.2d 1009 (2001).

"One of the fundamental purposes of the commissioner's expansive evidentiary reach is to encourage full disclosure and cooperation among the parties during the pendency of a claim. . . . [A] commissioner must always protect the substantial rights of the parties [which] include the right of the employer . . . independently to examine the claimant, to notice his deposition, and to insist on hearing his personal testimony at a formal hearing. . . . Protecting such substantial rights is part and parcel of ensuring that each party in a compensation proceeding receives a fair hearing." (Citation omitted; internal quotation marks omitted.) *Bidoae* v. *Hartford Golf Club*, 91 Conn. App. 470, 477, 881 A.2d 418, cert. denied, 276 Conn. 921, 888 A.2d 87 (2005), cert. denied, 547 U.S. 1112, 126 S. Ct. 1916, 164 L. Ed. 2d 665 (2006). "The matter rests in the legal discretion of the commissioner, and that requires such notice as is reasonable under the circumstances." *Pallanck* v. *Donovan*, 109 Conn. 469, 472, 147 A. 14 (1929).

In the present case, the plaintiff did not provide the defendants notice of her *Osterlund* claim. In her request for a formal hearing, she only identified "Form 36/Discontinuation of Benefits" as an issue for the formal hearing. The form 36 filed by the defendants stated that "maximum medical improvement" was the basis for the discontinuation of temporary total benefits. As a result, the March 11, 2015 hearing was scheduled to determine whether the plaintiff had reached maximum medical improvement. As the plaintiff conceded at the hearing, she did not have evidence to rebut the defendants' claim that she had reached maximum medical improvement. Instead, she sought to present evidence in support of an *Osterlund* claim, without providing fair notice. If the commissioner had let this occur, the defendants would have been subjected to trial by ambuscade, a violation of their cognizable due process right to notice. Thus, the plaintiff's due process claim is further undermined because, as a result of plaintiff's trial tactics, the commissioner was left with no choice but to delay the plaintiff from presenting her vocational total disability claim pursuant to *Osterlund* in order to protect the defendants' right to due process.

## II

The plaintiff also claims that the commissioner erred in determining that she was not totally disabled. We conclude that this claim, as the plaintiff frames it, is not ripe for review.

"[R]ipeness is a sine qua non of justiciability . . . ." (Internal quotation marks omitted.) *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 624, 822 A.2d 196 (2003). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . As we have recognized, justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . Finally, because an issue regarding justiciability raises a question of law, our appellate review is plenary. (Citations omitted; footnote omitted; internal quotation marks omitted.) *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 568–69, 858 A.2d 709 (2004)

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86–87, 952 A.2d 1 (2008).

The plaintiff argues that because she was vocationally totally disabled pursuant to *Osterlund*, the commissioner improperly found that she has a work capacity. As previously discussed in this opinion, the plaintiff opted not to pursue this claim despite the commissioner's invitation to do so, and, thus, it was not litigated. Now, on appeal, we can only speculate what evidence the plaintiff[8] could have presented in support of this theory and how the defendants could have challenged it. Moreover, the commissioner never made a finding with respect to whether the plaintiff was vocationally totally disabled pursuant to *Osterlund*, and, if the plaintiff's pattern of reluctance to pursue this claim through the offered channels continues, a final decision may never be reached on it. For us to now review this claim, as the plaintiff characterizes it, on appeal, would violate

the principles of ripeness by prematurely adjudicating a hypothetical claim. As a result, the plaintiff's decision not to return for a hearing only a few weeks later to present evidence that she was vocationally totally disabled pursuant to *Osterlund* has left this claim unripe for review.

The appeal is dismissed in part; the decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The Workers' Compensation Trust, the workers' compensation insurer for St. Lucian's Residence, Inc., is also a defendant in this case.

[2] "A [f]orm 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." (Internal quotation marks omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 320 n.1, 823 A.2d 1223 (2003).

[3] "The essence of an *Osterlund* type argument is that even though the injured worker can do *some theoretical* menial work, the injured worker's physical or mental condition due to his or her injury or illness is such that [she] cannot in the exercise of reasonable diligence find employment and, therefore, is just as much totally disabled as though the injured worker could not work at all." (Emphasis in original.) 3 A. Sevarino, Connecticut Workers' Compensation After Reforms (7th Ed. 2017) § 6.02.5, p. 908.

[4] On November 23, 2015, the plaintiff also filed a motion to add additional evidence to the record, seeking to introduce a vocational capacity evaluation, and a motion to correct. The commissioner denied the motion to correct and did not rule on the motion to introduce evidence.

[5] General Statutes § 31-307 (a) provides: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of his average weekly earnings as of the date of the injury, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to section 31-310; but the compensation shall not be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred. No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided the minimum payment shall not exceed seventy-five per cent of the employee's average weekly wage, as determined under section 31-310, and the compensation shall not continue longer than the period of total incapacity."

[6] General Statutes §31-298 provides: "Both parties may appear at any hearing, either in person or by attorney or other accredited representative, and no formal pleadings shall be required, beyond any informal notices that the commission approves. In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. No fees shall be charged to either party by the commissioner in connection with any hearing or other procedure, but the commissioner shall furnish at cost (1) certified copies of any testimony, award or other matter which may be of record in his office, and (2) duplicates of audio cassette recordings of any formal hearings. Witnesses subpoenaed by the commissioner shall be allowed the fees and traveling expenses that are allowed in civil actions, to be paid by the party in whose interest the witnesses are subpoenaed. When liability or extent of disability is contested by formal hearing before the commissioner, the claimant shall be entitled, if he prevails on final judgment, to payment for oral testimony or deposition testimony rendered on his behalf by a competent physician, surgeon or other medical provider, including the stenographic and videotape recording costs thereof, in connec-

tion with the claim, the commissioner to determine the reasonableness of such charges."

[7] The plaintiff argues that the commissioner's decision not to allow her to present evidence could have a preclusive effect in later proceedings. She has failed to support this assertion with any authority. At oral argument before this court, the defendants conceded that the plaintiff can still pursue a vocational total disability claim.

[8] The record does contain some evidence that the plaintiff presented in support of her *Osterlund* claim. This evidence includes her limited testimony at the March 11, 2015 hearing, her vocational capacity evaluation, and her functional capacity evaluation. We do not know, however, what else she might have testified to, what her neighbor, a purported fact witness, might have testified to, and whether or on what grounds the defendants would rebut this claim.

———————————————